STATE OF MINNESOTA

IN SUPREME COURT

A14-0132
A14-0224

Court of Appeals                                                                    Wright, J.
                                              Concurring, Anderson and Dietzen, JJ.
State Farm Mutual Automobile Insurance Company,          Took no part, Hudson, J.

             Appellant,

vs.                                                        Filed: December 16, 2015
                                                          Office of Appellate Courts
Angela Mary Lennartson,

             Respondent,

Katie Foss,

             Respondent.

_____

Suzanne Wolbeck Kvas, Lutter, Gilbert & Kvas, LLC, Eagan, Minnesota, for appellant.

D. Patrick McCullough, Ashley Bonine, McCullough & Associates, P.A., Saint Paul, Minnesota, for respondents.

James S. Ballentine, Schwebel, Goetz & Sieben, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Association for Justice.

_____

S Y L L A B U S

1.  The plain language of the Minnesota No-Fault Automobile Insurance Act, Minn.

Stat. §§ 65B.41-.71 (2014), does not bar an insured from recovering no-fault benefits for

1

medical expenses recovered in a prior negligence action, and there is no ground on which to read such a bar into the No-Fault Act.

2. Collateral estoppel does not preclude an insured from seeking medical-expense or income-loss benefits in no-fault arbitration for the same expenses or losses recovered as damages in a prior negligence action.

Affirmed.

O P I N I O N

WRIGHT, Justice.

The two cases before us in this consolidated appeal involve a dispute over the obligation of an insurer to pay no-fault medical-expense or income-loss benefits after the same expenses or losses were recovered in a tort action. We consider two questions: (1) whether the Minnesota No-Fault Automobile Insurance Act (No-Fault Act), Minn. Stat. §§ 65B.41-.71 (2014), bars an insured from recovering no-fault benefits for medical expenses already recovered as damages in a negligence action; and (2) whether collateral estoppel bars an insured from seeking medical-expense or income-loss benefits in no-fault arbitration when the insured has previously recovered damages for the same expenses or losses in a negligence action. With respect to the first question, we conclude that the plain language of the No-Fault Act does not bar an insured from recovering no-fault benefits for medical expenses previously recovered in a negligence action. Moreover, there is no legal basis to look beyond the plain meaning of the statutory text and import such a bar into the No-Fault Act. With respect to the second question, we conclude that collateral estoppel does not bar an insured from seeking medical-expense or income-loss benefits in no-fault

2

arbitration after recovering the same expenses or losses as damages in a negligence action. Therefore, we affirm the decision of the court of appeals that neither the No-Fault Act nor collateral estoppel barred the arbitrators' awards of no-fault benefits to respondents.

I.

Respondents Angela Lennartson and Katie Foss were involved in separate car accidents and recovered damages in their respective negligence actions. Subsequent to their recovery of damages, each was awarded no-fault benefits from their insurer, appellant State Farm Mutual Automobile Insurance Company, in arbitration proceedings under the Minnesota No-Fault Insurance Act (No-Fault Act), Minn. Stat. §§ 65B.41-.71. We address below the relevant facts of each case.

Lennartson was injured in a car accident in August 2008. She obtained medical treatment for her injuries and sought no-fault benefits from her insurer, State Farm, for the resulting medical expenses. When the accident occurred, Lennartson was covered by her parents' State Farm insurance policy, which had a no-fault medical coverage limit of $40,000. State Farm discontinued Lennartson's no-fault benefits in January 2010, after the results of Lennartson's independent medical examination. By that time, State Farm had paid Lennartson $11,671 in no-fault medical-expense benefits.

Lennartson next sued the driver of the other vehicle for negligence, claiming $23,910 in past medical expenses. In November 2012, a jury awarded Lennartson, in addition to other relief, the entire amount of damages that she sought for past medical expenses. The district court deducted the no-fault benefits State Farm had already paid to Lennartson, as required by Minn. Stat. § 65B.51, subd. 1.

3

Lennartson subsequently petitioned for no-fault arbitration, seeking reimbursement for the same medical expenses that the jury had awarded in the negligence action. The arbitrator awarded Lennartson $11,790 in past medical expenses plus interest. State Farm moved to vacate the award on two grounds. First, State Farm argued that Lennartson obtained a double recovery, which contravenes the public policy of the No-Fault Act. Second, State Farm maintained that collateral estoppel barred the arbitration. The district court granted State Farm's motion to vacate Lennartson's arbitration award, concluding that both the express public policy purpose of the No-Fault Act and collateral estoppel bar an award of benefits in a no-fault arbitration based on the same medical expenses previously awarded as damages in a negligence action.

Katie Foss was injured in a car accident in November 2009. She obtained medical treatment for her injuries and sought no-fault benefits from her insurer, State Farm. The medical coverage limit for Foss's State Farm policy was $50,000 and the income-loss limit was $20,000. State Farm discontinued Foss's no-fault benefits in June 2012, after the results of Foss's independent medical examination. By that time, State Farm had paid Foss $39,667 in no-fault medical-expense benefits.

In October 2011, prior to State Farm's discontinuation of her no-fault benefits, Foss brought an action in negligence against the other driver involved in the collision. Foss claimed $46,641 in past medical expenses and $7,574 in past income loss. In January 2013, the jury awarded Foss $19,760 in past medical expenses, but did not award damages for past income loss.

Following the conclusion of her lawsuit, Foss petitioned for no-fault arbitration, seeking no-fault benefits for the past medical expenses and income loss that she had not recovered in the negligence action. The arbitrator awarded Foss $8,284 in no-fault benefits for past medical expenses and $3,783 for wage loss. State Farm moved to vacate the arbitration award, arguing that collateral estoppel barred the no-fault arbitration. The district court denied State Farm's motion, concluding that collateral estoppel did not preclude Foss from arbitrating her claim for no-fault benefits for medical expenses and wage loss that she had claimed but had not recovered in her negligence action.

Lennartson appealed the district court's decision against her, and State Farm appealed the district court's decision in favor of Foss. The cases were consolidated on appeal. The court of appeals affirmed the decision in favor of Foss and reversed the decision against Lennartson. *State Farm Mut. Auto. Ins. Co. v. Lennartson*, 857 N.W.2d 713, 725 (Minn. App. 2014). The court of appeals concluded that the No-Fault Act does not preclude an insured from obtaining no-fault benefits for the same economic loss for which damages were previously awarded in a negligence action. *Id.* at 721. The court of appeals also concluded that collateral estoppel does not bar an insured who brings a negligence action from later seeking benefits for the same economic loss in no-fault arbitration. *Id.* at 722. We granted State Farm's petition for review.

II.

We first address whether the No-Fault Act bars an insured from seeking no-fault benefits for a loss that has been previously recovered in a negligence action. This issue is

5

raised only in Lennartson's case.[1]

The No-Fault Act mandates benefits for "basic economic loss" from injuries "arising out of the maintenance or use of a motor vehicle." Minn. Stat. § 65B.44, subd. 1(a). The No-Fault Act has several purposes, including "to relieve the severe economic distress of uncompensated victims of automobile accidents within this state," "to encourage appropriate medical and rehabilitation treatment of the automobile accident victim" by ensuring "prompt payment" of benefits for basic economic loss, and "to provide offsets to avoid duplicate recovery." Minn. Stat. § 65B.42(1), (3), (5).

In this appeal, State Farm renews the two primary arguments it raised below, that (1) Lennartson's no-fault award should be vacated because Lennartson no longer had a "loss" within the meaning of the No-Fault Act after recovering damages in negligence for all of her claimed past medical expenses, and (2) Lennartson's double recovery is contrary to the purpose of the No-Fault Act. Both arguments present questions of statutory interpretation, which we review de novo. *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 716 (Minn. 2014). The goal of statutory interpretation is to effectuate the intent of the Legislature. Minn. Stat. § 645.16 (2014); *Brayton v. Pawlenty*, 781 N.W.2d 357, 363 (Minn. 2010). When the Legislature's intent is clear from the unambiguous language of a statute, we interpret the statute according to its plain meaning. *State v. Rick*, 835 N.W.2d

---

[1] In Foss, State Farm did not argue at the district court, and does not argue here, that the definition of "loss" in the No-Fault Act and the No-Fault Act's policy against duplicate recoveries preclude Foss's no-fault award. This is because, in her no-fault arbitration, Foss sought benefits only for economic loss that she did not recover in her negligence action. By contrast, Lennartson sought and obtained no-fault benefits for the same economic loss—specifically, past medical expenses—that she had recovered in her negligence action.

6

478, 482 (Minn. 2013). But if a statute is susceptible to more than one reasonable interpretation, the statute is ambiguous and we may consider other factors to ascertain the Legislature's intent. *Lietz v. N. States Power Co.*, 718 N.W.2d 865, 870 (Minn. 2006). "[J]udicial construction of a statute becomes part of the statute as though written therein." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012).

## A.

We first address whether Lennartson had a medical-expense "loss" entitling her to no-fault benefits after recovering all of her claimed past medical expenses in the negligence action. The No-Fault Act requires that no-fault insurance provide "reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle." Minn. Stat. § 65B.44, subd. 1(a). The No-Fault Act defines "loss" as "economic detriment resulting from the accident causing injury, consisting only of" six statutorily defined categories, including "medical expense." Minn. Stat. § 65B.43, subd. 7.

State Farm argues that Lennartson does not have a reimbursable "loss" within the meaning of section 65B.43, subdivision 7, because after recovering all of her claimed past medical expenses in the negligence action, "Lennartson does not meet the threshold requirement of 'economic detriment.' " We recently clarified, however, that a claimant need not independently prove "economic detriment" in order to have a reimbursable "loss" under the No-Fault Act. *Schroeder v. W. Nat'l Mut. Ins. Co.*, 865 N.W.2d 66, 68-69 (Minn. 2015). Rather, "if an injured person suffers a loss—in other words, if he or she satisfies the requirements of one of the six statutory categories [listed in section 65B.43, subdivision 7]—that person has suffered economic detriment as well." *Id*. Thus, contrary to State

7

Farm's assertion, economic detriment is not a "threshold requirement." The relevant question is whether Lennartson satisfied the statutory requirements for "medical expense" benefits. *See id.*

Under the No-Fault Act, medical-expense benefits "shall reimburse all reasonable expenses" for "necessary" services and products enumerated in Minn. Stat. § 65B.44, subd. 2(a).[2] Because the statute does not define "reimburse," we apply the plain and ordinary meaning of the term. Minn. Stat. § 645.08(1) (2014); *Staab*, 813 N.W.2d at 72. The plain and ordinary meaning of "reimburse" in this context is "[t]o pay back or compensate (another party) for money spent or losses incurred." *The American Heritage Dictionary of the English Language* 1481 (5th ed. 2011); *see also Black's Law Dictionary* 886, 1476 (10th ed. 2014) (defining "reimbursement" to mean "[r]epayment" or "[i]ndemnification," and defining "indemnification" to mean "the action of compensating for loss or damage sustained"); *Webster's Third New International Dictionary of the English Language Unabridged* 1147, 1914 (1976) (defining "reimburse" as "[t]o make restoration or payment of an equivalent to (as a person): indemnify," and in turn defining "indemnify" as "[t]o make compensation to for incurred hurt or loss or damage").

Notably, there is no temporal limit in the definition of "loss" in section 65B.43, subdivision 7, in the description of "medical expense benefits" in section 65B.44, subdivision 2, or in the dictionary definitions of "reimburse." But section 65B.54 specifies that medical-expense benefits and other basic-economic-loss benefits become "payable

---

[2] State Farm does not argue here that Lennartson's claimed past medical expenses are unreasonable or unnecessary.

monthly as loss *accrues*." Minn. Stat. § 65B.54, subd. 1 (emphasis added). And section 65B.54 further specifies that "[l]oss accrues . . . as . . . medical . . . expense is *incurred*." *Id.* (emphasis added); *see also The American Heritage Dictionary* at 1481 (providing that the definition of "reimburse" includes "[t]o pay back or compensate (another party) for money spent or losses *incurred*" (emphasis added)). We determined in *Stout v. AMCO Insurance Co.* that an injured person "incurs" medical expenses under the No-Fault Act "as he or she receives bills for medical treatment." 645 N.W.2d 108, 113 (Minn. 2002). We also explained that a later event, such as "[a] reduction in the amount billed, whether obtained pursuant to a settlement agreement or a health insurer's fee schedule, does not modify the amount of medical expense incurred," and therefore does not modify the "loss" that accrued to the injured person. *Id.* Applying our reasoning in *Stout*, Lennartson incurred a medical-expense loss at the moment she was billed for medical services. That Lennartson subsequently recovered damages for the same medical expenses in a negligence action did not modify or eliminate the loss, because the loss had already accrued to her.

State Farm argues, however, that our analysis of "loss" in *Stout* applies only to the issue addressed in that case—whether the discounted rate paid by a claimant's health insurer determined the amount of the claimant's medical-expense loss that the no-fault insurer was obligated to pay. *Id.* at 112. Similarly, the concurrence implies that *Stout* may be limited to its facts. We disagree. Our analysis of "loss" in *Stout* applies to the language of the No-Fault Act; it is not limited to the specific facts of that case. *See Swanson v. Brewster*, 784 N.W.2d 264, 272-73 (Minn. 2010) (explaining that what was "at issue in *Stout*" were the "phrases and words 'economic loss benefits,' 'medical expense,' and

9

'incurred' from the No-Fault Act"). In *Stout*, we first addressed the language of Minn. Stat. § 65B.54, subd. 1, and concluded that loss "accrues" as "medical expense" is "incurred." *See* 645 N.W.2d at 113. We then applied the "well-fixed and delineated definition" of "incur," which is to "become liable for," *not* to "pay for." *Id.* Because an injured person "becomes liable for" medical expenses when those expenses are originally billed, the expenses billed are the relevant measure of "loss" for purposes of the No-Fault Act. *See id.* Nothing about our analysis of "loss" limits its application to the particular facts of *Stout.*

Our analysis of "loss," "medical expense," and "incur" in *Stout* is consistent with our precedent. In *Collins v. Farmers Insurance Exchange*, we interpreted a provision of an automobile liability policy in which the insurer agreed to "pay all reasonable expenses actually *incurred* for necessary medical . . . services." 271 Minn. 239, 241, 135 N.W.2d 503, 504 (1965) (emphasis added) (internal quotation marks omitted). The plaintiff had negotiated settlements with his medical providers that reduced his total medical bills from over $5,000 to $2,250. *Id.* at 241, 135 N.W.2d at 505. Because the insurer contractually agreed to pay expenses actually *incurred*, the plaintiff argued that he was entitled to recover the full policy limit of $5,000, not just the $2,250 he had paid the medical providers under the negotiated settlement. *Id.* We agreed, reasoning that, based on the definition of "incur," the insurer "intended to bind itself *to pay the amount the insured became liable for*, not the

amount [the insured] paid as a result of a collateral transaction." *Id.* at 244, 135 N.W.2d at 507 (emphasis added).[3]

In light of the No-Fault Act's provision that "loss" accrues as medical expense is "incurred" and consistent with our construction of that provision in *Stout*, 645 N.W.2d at 113, we hold that an insured's recovery of her claimed past medical expenses under a negligence theory does not reduce or eliminate her "loss," which accrued to her when the expenses were billed. Accordingly, Lennartson suffered a medical-expense "loss" within the meaning of the No-Fault Act.

B.

Having concluded that an injured person suffers medical-expense "loss" within the meaning of the No-Fault Act even when all claimed past medical expenses have been previously recovered under a negligence theory, we next consider whether the No-Fault Act reduces or eliminates the insurer's obligation to pay no-fault medical-expense benefits based on the prior negligence recovery.

---

[3] Other state supreme courts have reached conclusions similar to those in *Stout* and *Collins* based on the meaning of the word "incurred." *See, e.g.*, *Samsel v. Allstate Ins. Co.*, 59 P.3d 281, 286 (Ariz. 2002) (collecting cases from multiple jurisdictions, explaining that "[t]he narrow rule to be extracted from all of these cases is that 'incurred' or 'actually incurred' language does not bar an insured who became liable for expenses from recovery simply because 'of the availability of collateral means of discharging his liability therefor so as to have relieved him of the need to pay the charges personally' "); *Winter v. State Farm Mut. Auto. Ins. Co.*, 328 P.3d 665, 670 (Mont. 2014) (rejecting the automobile insurer's argument that it had no obligation to pay medical coverage benefits after the claimant's medical expenses were paid by his health insurance policy because the insured "incurred" medical expenses at the time services were rendered and the fact that a third party ultimately would pay those expenses was irrelevant).

11

Minnesota Statutes § 65B.51 addresses the relationship between no-fault insurance and a related negligence action. Pertinent to our analysis, section 65B.51 requires a district court to deduct from any recovery in a cause of action for negligence "the value of basic or optional economic loss benefits paid or payable" by a no-fault insurer:

> *With respect to a cause of action in negligence* accruing as a result of injury arising out of the operation, ownership, maintenance or use of a motor vehicle with respect to which security has been provided as required by sections 65B.41 to 65B.71, *the court shall deduct from any recovery the value of basic or optional economic loss benefits paid or payable*, or which would be payable but for any applicable deductible.

Minn. Stat. § 65B.51, subd. 1 (emphasis added). Section 65B.51, subdivision 1, prevents a *tortfeasor*, or the *tortfeasor's* insurer, from having to pay damages for loss that is already paid or payable by no-fault benefits. But neither section 65B.51, subdivision 1, nor any other provision of the No-Fault Act reduces or eliminates the *no-fault insurer's* obligation to pay benefits to an injured motorist for medical-expense or other economic loss based on a negligence award. In other words, the No-Fault Act does not relieve a no-fault insurer from its obligation to pay basic economic benefits even when the insured already has recovered the cost of medical expenses in a negligence action.

State Farm imputes such an offset in the No-Fault Act on the ground that the No-Fault Act intends to prohibit duplicate recoveries. But when a statute is "completely silent on a contested issue," we do not look beyond the statutory text to discern its meaning unless there is an "ambiguity of expression"—rather than a "failure of expression." *Rohmiller v. Hart*, 811 N.W.2d 585, 590 (Minn. 2012) (quoting *Genin v. 1996 Mercury Marquis*, 622 N.W.2d 114, 117 (Minn. 2001)). In short, we look beyond the statutory text *only* if its

"silence renders the statute susceptible to more than one reasonable interpretation." *Id.*
We "cannot supply that which the legislature purposely omits or inadvertently overlooks."
*Id*. at 591 (quoting *Wallace v. Comm'r of Taxation*, 289 Minn. 220, 230, 184 N.W.2d 588, 594 (1971)).

Here, as in *Rohmiller*, when construing Minn. Stat. § 65B.51, we address statutory silence, not ambiguity. Also like the statute at issue in *Rohmiller*, the No-Fault Act is not completely silent with respect to the contested issue—namely, the relationship between no-fault benefits and a negligence award. *See* Minn. Stat. § 65B.51. Notably, the No-Fault Act provides an offset that bars certain duplicate recoveries when a claimant is awarded both no-fault benefits and damages in negligence. *See id.*, subd. 1. That offset simply does not inure to the benefit of the no-fault insurer. *See id*.

State Farm directs our attention to Minn. Stat. § 65B.42(5), in which the Legislature states that a purpose of the No-Fault Act is to "*provide offsets* to avoid duplicate recovery." (Emphasis added.) This statement of purpose, however, does not render the No-Fault Act's silence ambiguous.[4] The Legislature did not state that it generally intended to prohibit all duplicate recoveries. The Legislature stated instead that its goal was to "provide offsets" to avoid such recoveries. Minn. Stat. § 65B.42(5). It has fulfilled this goal by providing

---

[4]     Citing treatises, the concurrence suggests that our decision in this case is contrary to what commentators would have predicted based on the statute's statement of purpose and our prior case law. But treatises are not binding. *Cf. In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 754 N.W.2d 544, 554 (Minn. 2008) (distinguishing statement in prior case that was based on a treatise and not precedent). Rather, we are bound by principles of statutory interpretation and our prior decisions.

offsets in section 65B.51, subdivision 1, and other provisions of the No-Fault Act. *See, e.g.*, Minn. Stat. § 65B.49, subd. 3a(4) (preventing providers of uninsured and underinsured motorist coverage from having to pay for the amount of "basic economic loss benefits paid or payable" by the no-fault insurer). The Legislature could have included an additional offset provision that reduces or eliminates the obligation of the no-fault insurer to pay benefits for economic loss already reimbursed in a negligence award. But the Legislature has not done so. Because ambiguity is not created by the statute's silence, we "are not free to substitute amendment for construction and thereby supply the omissions of the Legislature." *Rohmiller*, 811 N.W.2d at 590 (citation omitted).

The conclusion we reach here is consistent with our decisions in *Do v. American Family Mutual Insurance Co.*, 779 N.W.2d 853 (Minn. 2010), and *Stout*, 645 N.W.2d 108. In both cases, we declined to bar duplicate recoveries that were not expressly prohibited by statute. *See Do*, 779 N.W.2d at 857, 860 (holding that the injured motorist's prior settlement with the tortfeasor's insurer did not reduce or eliminate the no-fault insurer's obligation to pay basic-economic-loss benefits under the collateral-source statute, Minn. Stat. § 548.251 (2014));[5] *Stout*, 645 N.W.2d at 112-13 (holding that a no-fault insurer cannot reduce its obligation to pay basic-economic-loss benefits on the ground that the injured person's health insurer negotiated discounts with the health care providers, in part because no language in the No-Fault Act provides for such a deduction). Although we

---

[5] The concurrence questions the persuasive value of *Do*, because our holding in *Do* was based on our construction of the collateral-source statute. *See Do*, 779 N.W.2d at 859. Yet in *Do*—as in the present case—we relied on the plain meaning of a statute even though it resulted in duplicate recovery. *Id.* at 860.

14

acknowledged in *Do* and *Stout* that our holdings could result in "windfalls" for insureds, we did not venture beyond the statutory text to impose a bar to duplicate recovery. *See Do*, 779 N.W.2d at 860; *Stout*, 645 N.W.2d at 114. As we explained in *Do*,

> We recognize that . . . it is possible that a plaintiff who chooses to pursue [her] own claim serially first against the tortfeasor and then against [her] own no-fault insurer may receive a windfall. But the plaintiff also takes a risk in pursuing [her] claims piecemeal that [s]he will receive less than full compensation. . . . *Ultimately, the question of a potential windfall to the plaintiff in this circumstance is one for the legislature and not this court. In any event, the no-fault insurer paid exactly what it was required to pay: basic economic loss benefits without regard to fault.*

779 N.W.2d at 860 (emphasis added) (internal quotation marks omitted). The circumstances here present no reason for us to deviate from the analysis we applied in *Do*. As in *Do*, the no-fault insurer pays exactly what the No-Fault Act requires. *See id.* We acknowledge that this result might seem to unfairly reward no-fault claimants who strategically pursue a negligence action before no-fault arbitration. But such a concern is a public policy issue for the Legislature, not the judicial branch of government. Our responsibility here begins and ends with applying the plain language of the statute to the facts before us.[6]

---

[6] The concurrence advocates for different policy "incentives." But we do not "create[ ] incentives." Our precedent dictates that we apply the plain meaning of the statute and go no further. *In re Reichmann Land & Cattle, LLP*, 867 N.W.2d 502, 511 (Minn. 2015) ("[W]hen the words of a statute are clear, we may not disregard the letter of the law under the pretext of pursuing the law's spirit." (quoting *Gassler v. State*, 787 N.W.2d 575, 585 (Minn. 2010))); *see also* Minn. Stat. § 645.16. It is not our role to ignore the text of a statute or find fault in litigants who take statutes—and our prior decisions—at their word. We leave the policy choices advanced by the concurrence for a different branch of government. *See* Minn. Const. art. III, § 1; *In re Application of the Senate*, 10 Minn. 78, 80, 10 Gil. 56, 57 (1865) ("The powers and duties of each department [of government] are

Therefore, we affirm the court of appeals and conclude that the No-Fault Act does not preclude the arbitrator's award of no-fault benefits to Lennartson.

III.

We next address whether collateral estoppel bars an insured from seeking medical-expense or income-loss benefits in no-fault arbitration for the same expenses or loss she litigated as damages in her negligence action. State Farm raises this issue with respect to both Foss and Lennartson.

Whether collateral estoppel applies is a mixed question of law and fact, which we review de novo. *State v. Lemmer*, 736 N.W.2d 650, 659 (Minn. 2007). Collateral estoppel bars the relitigation of issues that are "both *identical* to those issues already litigated by the parties in a prior action and *necessary and essential* to the resulting judgment." *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982) (emphasis added). Specifically, collateral estoppel applies when (1) the issue to be addressed is identical to an issue in a prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party received a full and fair opportunity to be heard on the adjudicated issue. *Id.* The element of collateral estoppel disputed here is whether there is an issue that is identical to one addressed in a prior adjudication.

The court of appeals concluded that the issues in respondents' no-fault arbitrations are not identical to those in the tort action. *Lennartson*, 857 N.W.2d at 722. We agree.

---

distinctly defined. . . . This . . . prevents an assumption by either department of power not properly belonging to it . . . .").

Even if the damages in the tort action are identical to the medical-expense and income- loss benefits at issue in the no-fault claim, the underlying legal issues are not the same. The legal issue to be decided in a tort action is whether the defendant was negligent. *Nelson v. Am. Family Ins. Grp.*, 651 N.W.2d 499, 511 (Minn. 2002). By contrast, the issue in a no-fault claim is "whether [the insurer] is required to pay no-fault benefits" under the insurance policy and the No-Fault Act. *Id.* In a tort action, liability and damages require negligence of the tortfeasor. *Id.* But a claimant's entitlement to no-fault benefits is determined without regard to principles of fault. *See* Minn. Stat. § 65B.42(1); *see also* Minn. Stat. § 65B.44 ("Basic economic loss benefits shall provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle."). Notwithstanding any superficial similarities between a negligence action and an action to determine no-fault benefits, the legal issues are "not identical."[7] *Nelson*, 651 N.W.2d at 511. Foss and Lennartson were not collaterally estopped from arbitrating their claims for no-fault benefits.

Our conclusion that collateral estoppel does not preclude arbitration of the no-fault claims of Foss and Lennartson also is supported by our prior decisions. In *Milwaukee Mutual Insurance Co. v. Currier*, 310 Minn. 81, 245 N.W.2d 248 (1976), we concluded

---

[7] Amicus curiae Minnesota Association for Justice (MAJ) participated in this case to address what it characterized as a "fundamental misconception" of State Farm's position— namely, that "one system of recovery is available with two methods to obtain the same no-fault benefits" and that payment of such benefits in these cases constitutes a "double recovery." MAJ's brief largely focuses on its contention that causation issues are analyzed differently in tort and in no-fault—a contention that we need not address here because, as MAJ observes, the "chief" difference between an award of damages in tort and an award of no-fault benefits is that no-fault benefits "are awarded regardless of fault."

that a negligence verdict did not preclude subsequent, contractually required arbitration proceedings on a claim for uninsured-motorist benefits. We explained that "[s]uch a result would run[] directly contrary to the plain terms of the parties' agreement, namely, that the determination of entitlement [to benefits] shall be made not by judicial action but by agreement or arbitration." 310 Minn. at 86, 245 N.W.2d at 251. "[A] res judicata defense does not preclude arbitration proceedings solely because the underlying claim would be barred by res judicata if asserted in an action in court," *id.* at 88, 245 N.W.2d at 251, and an arbitrator "may give whatever weight to the prior trial proceedings as [the arbitrator] determines justified under all the circumstances," *id.* at 88, 245 N.W.2d at 252.

We extended our holding in *Milwaukee Mutual* to the no-fault arbitration context in *National Indemnity v. Farm Bureau Mutual Insurance Co.*, 348 N.W.2d 748, 750 (Minn. 1984). *National Indemnity* involved arbitration of a no-fault insurer's claim for indemnification from the tortfeasor's insurer. *Id.* at 749-50. Relying on our holding in *Milwaukee Mutual*, we concluded that the arbitrator was not bound by the factual findings of the jury in the prior negligence action against the tortfeasor. *Id.* at 751. We clarified that our decision in *Milwaukee Mutual* not only applies to arbitration by agreement, but also applies to arbitration that is compulsory under the No-Fault Act. *Id.* In reaching our conclusion, we explained that "no-fault arbitration was intended as a recourse totally separate from resort to the courts," *id.* at 750, and that "fact finding in judicial proceedings and in arbitration actions are independent," *id.* at 751 (citing *McDonald v. City of West Branch*, 466 U.S. 284 (1984) (holding that an arbitration award does not have preclusive effect in a subsequent action under 42 U.S.C. § 1983)).

18

Although the indemnity provisions of the No-Fault Act are not the basis for the dispute here, there is no meaningful basis for distinguishing *National Indemnity* and concluding that *Milwaukee Mutual* has no bearing here. Here, as in *National Indemnity*, fact-finding in the judicial proceeding is independent of fact-finding in an arbitration action. *Id.* As the court of appeals aptly observed, a no-fault arbitrator "can consider a wide range of evidence not normally admissible at trial" when determining a claimant's entitlement to basic-economic-loss benefits. *Lennartson*, 857 N.W.2d at 723-24. This greater breadth of admissible evidence is codified in the rules governing a no-fault arbitration proceeding. For example, Rule 24 expressly provides that

> *conformity to the legal rules of evidence shall not be necessary*. The parties shall be encouraged to offer, and the arbitrator shall be encouraged to receive and consider, evidence by affidavit or other document, including medical reports, statements of witnesses, officers, accident reports, medical texts, and other similar written documents *which would not ordinarily be admissible as evidence in the courts of this state*.

Minn. R. No-Fault Arb. 24 (emphasis added). The distinction between fact-finding in a civil action and fact-finding in no-fault arbitration is further highlighted by Rule 32, which provides: "Given the informal nature of no-fault arbitration proceedings, *the no-fault award shall not be the basis for a claim of estoppel* or waiver in any other proceeding." Minn. R. No-Fault Arb. 32 (emphasis added).

Moreover, there is a statutory right to arbitrate no-fault claims of $10,000 or less,[8] Minn. Stat. § 65B.525, subd. 1, which is not extinguished following a judicial proceeding,

---

[8] Both Lennartson and Foss claimed $10,000 in no-fault benefits in their petitions for arbitration, invoking the mandatory arbitration provision of the No-Fault Act, Minn. Stat.

19

*Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 653 (Minn. 1990). As we have

explained, the existence of a statutory or contractual right was important to our decisions

in *National Indemnity* and *Milwaukee Mutual*. *Aufderhar*, 452 N.W.2d at 653. Indeed, in

*Aufderhar*, we characterized *National Indemnity* as holding "that a judgment following a

judicial proceeding did not extinguish the statutory right to arbitrate the issue because the

statute bound the two insurers to arbitrate as had the insurance contract provision to

arbitrate in *Milwaukee Mutual*." *Id.* Here, as in *National Indemnity*, a prior negligence

award does not "extinguish [an insured's] statutory right to arbitrate" a claim for no-fault

benefits. *Id.*

We acknowledge the apparent tension between *Milwaukee Mutual* and *National*

*Indemnity*, on the one hand, and the underinsured/uninsured motorist coverage cases cited

by State Farm, on the other. In *Employers Mutual Cos. v. Nordstrom*, for example, we held

that the judgment in a prior tort claim "establishes conclusively the damage" in a

subsequent claim for underinsured or uninsured motorist benefits.[9] 495 N.W.2d 855, 858

(Minn. 1993). But the underinsured/uninsured cases are not determinative here because

no-fault benefits are, by definition, awarded without regard to fault. Minn. Stat.

---

§ 65B.525, subd. 1. We previously have held that a person whose claim for no-fault benefits exceeds the jurisdictional limit in Minn. Stat. § 65B.525, subd. 1, may waive the excess in order to qualify for mandatory arbitration under the No-Fault Act. *Brown v. Allstate Ins. Co.*, 481 N.W.2d 17, 19 (Minn. 1992).

[9] We have reached similar conclusions in other underinsured/uninsured motorist coverage cases. *See, e.g.*, *Costello v. Aetna Cas. & Sur. Co.*, 472 N.W.2d 324, 326 (Minn. 1991) (holding that collateral estoppel precluded a claimant from relitigating the issue of damages in a subsequent judicial proceeding to determine whether the claimant's injury was caused by an underinsured motor vehicle).

§ 65B.42(1). By contrast, any award of underinsured or uninsured motorist benefits is premised on tort liability. *See Richards v. Milwaukee Ins. Co.*, 518 N.W.2d 26, 28 (Minn. 1994) ("[Underinsured motorist] coverage is a tort based coverage designed to provide a supplemental source of recovery only when the damages that the insured is *legally entitled to recover from the tortfeasor* exceed the tortfeasor's liability insurance limits." (emphasis added)); *McIntosh v. State Farm Mut. Auto. Ins. Co.*, 488 N.W.2d 476, 479 (Minn. 1992) ("Uninsured motorist coverage is not no-fault coverage; fault on the part of the uninsured motorist must be proven under tort law."). As we clarified in *Employers Mutual*, the judgment in a negligence action determines the amount the underinsurer is obligated to pay, "*not because [the underinsurer] is estopped by the judgment*, but because [the underinsurer] has contractually agreed to pay the judgment less the tort liability insurance recovery." 495 N.W.2d at 859 (emphasis added). Such is not the case with no-fault benefits.

State Farm argues that there is also a tension between our conclusion here—that collateral estoppel does not preclude arbitration of the no-fault claims of Foss and Lennartson—and our conclusion in *Ferguson v. Illinois Farmers Insurance Group Co.*, 348 N.W.2d 730, 733 (Minn. 1984)—that a no-fault insurer is allowed a credit in the amount of future medical expenses awarded as damages in the related tort action. *Ferguson*, however, is procedurally distinguishable from this case. In *Ferguson*, the plaintiff's no-fault and negligence claims were consolidated in one trial. *Id.* at 731. By contrast, here the no-fault claim was preceded by the tort action.

21

A tort action and a claim for no-fault benefits do not present identical legal issues. *Milwaukee Mutual* and *National Indemnity* are clear on this point. Accordingly, collateral estoppel does not preclude arbitration of the claims for no-fault benefits presented by Foss and Lennartson.

IV.

In summary, we hold that the plain language of the No-Fault Act, Minn. Stat. §§ 65B.41-.71, does not bar an insured from recovering no-fault benefits for medical expenses recovered in a prior negligence action. Collateral estoppel also does not preclude an insured from seeking medical-expense or income-loss benefits in no-fault arbitration for expenses or losses recovered as damages in a prior negligence action. Accordingly, we affirm the court of appeals' decisions in these consolidated cases.

Affirmed.


HUDSON, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

ANDERSON, Justice (concurring).

I agree with the court that the respondents are not collaterally estopped from seeking benefits in no-fault arbitration after litigating damages for the same economic loss in a negligence action. Therefore, I would affirm with respect to respondent Foss. I also concur in the court's opinion with respect to respondent Lennartson, but write separately because the court's opinion substantially understates the effect of the decision we announce today.

It is undisputed that Lennartson received a double recovery. Lennartson, candidly and appropriately, does not deny the obvious and admits this fact. Because I conclude that Lennartson is also correct that there is no statutory or case law bar to recovery here, I write separately to note the serious complications and pitfalls that necessarily follow from that conclusion.

Lennartson was injured in a motor vehicle accident in 2008. After reimbursing some of Lennartson's medical expenses, appellant State Farm discontinued her benefits following an independent medical evaluation. Instead of availing herself of the remedies afforded by the No-Fault Act, Lennartson sued the tortfeasor and obtained a jury award that included damages for all past medical expenses. Thereafter, Lennartson commenced arbitration against State Farm and was awarded no-fault benefits for the *same medical expenses* she had already recovered from the tortfeasor in the negligence action. This scenario is not anticipated by the Minnesota No-Fault Automobile Insurance Act ("No-Fault Act").

Although the result here is counter-intuitive and not necessarily reasonable, I generally agree that Lennartson has suffered a compensable loss under the no-fault statute and our precedent. The No-Fault Act states that "[b]asic economic loss benefits provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle," including up to $20,000 for medical expenses. Minn Stat. § 65B.44, subd. 1(a) (2014). A no-fault insurer is required to pay basic economic loss benefits "as loss accrues," which occurs when an expense "is incurred." Minn. Stat. § 65B.54, subd. 1 (2014). Lennartson undoubtedly suffered a compensable loss when she required medical treatment following her automobile accident in 2008, and that loss became payable by State Farm when the medical expenses were "incurred"—i.e., when Lennartson received her bill from the medical service provider. As the court notes, the result here is generally supported by our case law, which has allowed duplicative recoveries not barred by statute. *Do v. Am. Family Mut. Ins. Co.*, 779 N.W.2d 853 (Minn. 2010); *Stout v. AMCO Ins. Co.*, 645 N.W.2d 108, 113 (Minn. 2002).[1]

I write separately, however, because the result in this case is inconsistent with the purposes of the No-Fault Act, Minn. Stat. § 65B.42 (2014). One such purpose is "to provide offsets to avoid duplicate recovery." Minn. Stat. § 65B.42(5). There is no evidence in the record, and Lennartson cites none, that either the Legislature or our court ever

---

[1]     The precedential value of these two cases is questionable. *Do* was decided under the collateral-source statute, not the No-Fault Act. 779 N.W.2d at 880. *Stout* did not involve the manipulation of the order of events by an interested party and concerned the coordination of benefits; here, a negligence award is at issue. 645 N.W.2d at 109-11, 113.

contemplated that an insured would forego the "prompt payment" afforded by the No-Fault Act, *see* Minn. Stat. § 65B.42(1), (3), and first seek recovery directly from the tortfeasor.[2] The structure of the No-Fault Act supports the opposite implication—that an injured party should look first to the No-Fault Act for compensation—because an injured party who receives no-fault benefits for medical expenses and wage loss is not permitted to recover tort damages unless certain thresholds are reached. *See* Minn. Stat. § 65B.51, subds. (1), (3) (2014).[3]

Incentives matter, and today's ruling creates incentives that are inconsistent with the legislature's intent. The court's opinion will make litigation against the tortfeasor in the first instance an appealing option, rather than the last resort, for an injured plaintiff. The result here means more litigation seeking recovery of expenses from motor vehicle accidents. At a minimum, this will impair the No-Fault Act's objectives of "provid[ing] prompt payment of specified basic economic loss benefits," "speed[ing] the administration

---

[2]    In fact, two of the leading treatises on no-fault litigation in Minnesota suggested barriers to the recovery awarded here. *See* Paul F. McEllistrem, *No-Fault Benefits: An Overview*, *in Minnesota Motor Vehicle Accident Deskbook* 23-46 (Michael R. Fargione and Paul F. McEllistrem eds., 4th ed., 2009 & Supp. 2013) ("If a jury does not award damages for past medical expenses or past wage loss, general principles of estoppel would prevent a claimant from obtaining those damages against the no fault insurer. If a jury does award damages for past medical or wage loss, a no-fault claim would typically not exist for those same damages because this would provide a duplicate recovery."); Theodore J. Smetak et al., *Tort Actions*, *in Minnesota Motor Vehicle Insurance Manual* 219 (3d ed. 2000) ("Although [prior precedent] only address[es] future medical expense and wage loss, the rule should apply in other cases where plaintiff has been compensated for other expenses or losses that are identical to those benefits the claimant would be able to recover in the future from the no-fault insurer.").

[3]    The statutory threshold is not at issue here because, among other things, it is undisputed that the medical bills exceeded the minimum statutory threshold.

of justice," and "eas[ing] the burden of litigation on the courts of this state." *See* Minn. Stat. § 65B.42(1), (4).

To make matters worse, only those with the financial means to forego a prompt payment of benefits will benefit from this rule. Indeed, Lennartson did not recover in the negligence action until 2012, over 4 years after the motor vehicle accident. Thus, the court's framework does nothing to "relieve the severe economic distress of uncompensated victims." Minn. Stat. § 65B.42(1). Instead, the result here creates an opportunity for litigants to abuse the no-fault system, and that abuse, in turn, will drive up insurance policy premiums for those the No-Fault Act was designed to protect.

The No-Fault Act was enacted by the Legislature to address the "detrimental impact of automobile accidents on uncompensated injured persons [and] upon the orderly and efficient administration of justice in this state." Minn. Stat. § 65B.41. Thus, it is for the Legislature to address the complications and problems that will flow from the statutory language that the Legislature adopted.

Accordingly, I concur in the court's opinion as it relates to the Lennartson claims.


DIETZEN, Justice (concurring).

I join in the concurrence of Justice Anderson.