WESTERN NATIONAL INSURANCE
COMPANY, Respondent,

v.

Jon NGUYEN, Appellant.

A17-0314

Court of Appeals of Minnesota.

Filed September 18, 2017

Review Granted Nov. 28, 2017

Kelly Sofio, Oskie & Sofio, PLLC, St. Paul, Minnesota (for respondent).

Charles D. Slane, Isaac I. Tyroler, TSR Injury Law, Bloomington, Minnesota (for appellant).

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, Minnesota (for amicus Minnesota Ass'n for Justice).

Considered and decided by Halbrooks, Presiding Judge; Reyes, Judge; and Florey, Judge.

## OPINION

HALBROOKS, Judge

Appellant insured challenges the district court's order vacating his no-fault arbitration award, arguing that the district court erred by applying Minn. Stat. § 62Q.75, subd. 3, to bar his claim for no-fault benefits. Appellant also contends that the district court erred by vacating respondent insurer's obligation to pay arbitration fees. We affirm in part and reverse in part.

## FACTS

In January 2011, appellant Jon Nguyen sustained injuries in a motor-vehicle accident. The accident occurred during the course of Nguyen's employment while he was driving a company vehicle insured by respondent Western National Insurance Company. Nguyen's employer initially paid for his injury-related medical treatment as part of a workers' compensation claim. After Nguyen's workers' compensation benefits ended, Western National paid no-fault benefits to Nguyen. In May 2012, Western National requested that Nguyen attend an independent medical examination (IME). The examiner concluded that no further medical treatment was reasonable, necessary, or related to any injury sustained in the accident. Based on the IME, Western National notified Nguyen's attorney of its

denial of future benefits. Nguyen filed for no-fault arbitration. In January 2013, the no-fault arbitrator denied Nguyen's claim in its entirety.

In February 2014, Nguyen began treating with a new health-care provider, the Center for Diagnostic Imaging (CDI). CDI submitted a single bill to Western National for one of Nguyen's first visits. Western National responded to CDI by letter in May 2014, denying coverage for Nguyen's treatment based on the previous IME and the January 2013 arbitration. Nguyen continued treating with CDI, but CDI did not submit any additional bills to Western National. When Nguyen finished treatment with CDI near the end of 2014, his treatment charges exceeded $10,000.

In April 2016, Nguyen again filed for no-fault arbitration against Western National, seeking payment of the CDI bills. Western National asserted Minn. Stat. § 62Q.75, subd. 3, as a defense to the claim. A different arbitrator conducted a hearing and awarded Nguyen $11,695.23 in medical expenses, interest, and fees. Western National moved the district court to vacate the arbitration award.

In January 2017, the district court granted Western National's motion and vacated the award of arbitration fees and all but $1,027.25 of Nguyen's award for medical expenses and costs. The district court awarded Nguyen the value of the bill that CDI submitted to Western National in 2014. The district court concluded that Minn. Stat. § 62Q.75, subd. 3, applied, and that because CDI had submitted only one bill to Western National within the statutory six-month time frame, CDI could not collect its remaining charges. Thus, aside from the medical expenses for one visit, Nguyen did not experience a loss that would entitle him to no-fault benefits. The district court also concluded that medical-expense benefits never became due because CDI did not submit its claim to Western National pursuant to uniform electronic transaction standards. *See* Minn. Stat. § 65B.54, subd. 1 (requiring health-care providers to submit claims according to approved electronic standards and prohibiting health-care providers from directly billing insured when claim is not remitted pursuant to standards). Finally, the district court determined that Nguyen is not personally obligated to pay the outstanding CDI charges. Nguyen appeals.

## ISSUES

I. Did the district court err by applying Minn. Stat. § 62Q.75, subd. 3, to conclude that Nguyen did not suffer a "loss" under Minn. Stat. § 65B.54, subd. 1, that would entitle him to no-fault benefits?

II. Did the district court err by vacating the award of arbitration fees?

## ANALYSIS

Nguyen contends that the district court erred by vacating in part his no-fault arbitration award. The district court vacated the award on the basis that the arbitrator exceeded his authority by failing to apply Minn. Stat. § 62Q.75, subd. 3. *See* Minn. Stat. § 572B.23(a)(4) (2016) (directing Minnesota courts to vacate arbitration award when arbitrator exceeds the arbitrator's powers). While a no-fault arbitrator has the authority to decide questions of fact, courts interpret the law. *Weaver v. State Farm Ins. Cos.*, 609 N.W.2d 878, 882 (Minn. 2000). Appellate courts review de novo "the arbitrator's legal determinations necessary to granting relief." *Id.* A dispute regarding no-fault coverage also presents a question of law that we review de novo. *Garlyn, Inc. v. Auto-Owners Ins. Co.*, 814 N.W.2d 709, 712 (Minn. App. 2012); *see also Stand Up Multipositional Advantage MRI, P.A. v. Am. Family Ins. Co.*, 889

N.W.2d 543, 548 (Minn. 2017) (stating that whether a claim actually exists is a legal question for the courts).

## I.

■ Under the Minnesota No-Fault Automobile Insurance Act, Minn. Stat. §§ 65B.41-.71 (2016), an insured individual is entitled to basic economic-loss benefits for injuries arising out of the maintenance or use of a motor vehicle. Minn. Stat. § 65B.44, subd. 1. Basic economic-loss benefits, which include reasonable and necessary medical-expense benefits, become payable as loss accrues. Minn. Stat. § 65B.54, subd. 1. A "loss" accrues not when the injury occurs but rather when medical expenses are incurred. *Id.* And an injured person "incurs medical expense as he or she receives bills for medical treatment." *Stout v. AMCO Ins. Co.*, 645 N.W.2d 108, 113 (Minn. 2002).

■ Nguyen argues that Minn. Stat. § 62Q.75, subd. 3, cannot bar his no-fault claim because the statute only governs claims between health-care providers and health-plan companies and he is not a health-care provider. As a matter of first impression, we interpret Minn. Stat. § 62Q.75, subd. 3, to decide whether it applies to the determination of whether an individual is entitled to no-fault benefits. The aim of statutory interpretation is to effectuate the legislature's intent. *State Farm Mut. Auto. Ins. Co. v. Lennartson*, 872 N.W.2d 524, 529 (Minn. 2015). If legislative intent is clear from the statute's unambiguous language, we interpret the statute according to its plain meaning. *Id.* But if the statute's language is ambiguous because it is susceptible to different reasonable interpretations, we may consider other methods of construction to ascertain legislative intent. *Id.*

The Minnesota Health Plan Contracting Act sets forth the requirements for con-tracts between health-care providers and health-plan companies. Minn. Stat. §§ 62Q.732-.751 (2016). This act includes a prompt-payment statute. Minn. Stat. § 62Q.75. Under Minn. Stat. § 62Q.75, subd. 2(a), health-plan companies must either pay or deny clean claims within 30 days of receiving the claim. A "clean claim" is a claim that has no defect or impropriety and does not lack any required substantiating documentation. *Id.*, subd. 1(b). The general purpose underlying prompt-payment statutes is to prescribe a designated time period for health insurers to pay valid claims in order to facilitate timely payment to health-care providers. Michael Flynn, *The Check Isn't In The Mail: The Inadequacy of State Prompt Pay Statutes*, 10 DePaul J. Health Care L. 397, 402 (2007).

Minn. Stat. § 62Q.75 also establishes a timeline for health-care providers to "submit their charges" to health-plan companies. The statute provides:

[T]he health care providers and facilities specified in subdivision 2 must submit their charges to a health plan company or third-party administrator within six months from the date of service or the date the health care provider knew or was informed of the correct name and address of the responsible health plan company or third-party administrator, whichever is later. *A health care provider or facility that does not make an initial submission of charges within the six-month period shall not be reimbursed for the charge and may not collect the charge from the recipient of the service or any other payer....* This subdivision also applies to all health care providers and facilities that submit charges ... to reparation obligors for treatment of an injury under chapter 65B.

Minn. Stat. § 62Q.75, subd. 3 (emphasis added). Although this statutory chapter does not generally apply to no-fault insurers, the more specific language of Minn. Stat. § 62Q.75, subd. 3, expressly states that it applies to no-fault insurers. *Compare* Minn. Stat. § 62Q.02(a) (2016) ("This chapter applies only to health plans, as defined in section 62Q.01, and not to other types of insurance issued or renewed by health plan companies, unless otherwise specified."), *with* Minn. Stat. § 62Q.75, subd. 3. The last sentence of subdivision 3 provides that "[t]his subdivision also applies to all health care providers and facilities that submit charges to ... reparation obligors for treatment of an injury under chapter 65B." Minn. Stat. § 62Q.75, subd. 3; *see* Minn. Stat. § 65B.43, subd. 9 (2016) (defining "reparation obligor" as "an insurer or self-insurer obligated to provide the benefits required" under the no-fault act). In a conflict between two statutory provisions, specific provisions in the statute control over general provisions. *See* Minn. Stat. § 645.26, subd. 1 (2016) (directing Minnesota courts to construe special provision as prevailing and as an exception to general provision). And even if this statutory language could be construed as ambiguous, the legislative history supports our interpretation. *See* Hearing on S.F. No. 1998 Before the S. Comm. on Commerce (Apr. 6, 2005) (statement of Sen. Michel). We conclude that Minn. Stat. § 62Q.75, subd. 3, applies to health-care providers seeking reimbursement from no-fault insurers.

We agree with Nguyen that the statute is silent about insured claimants and unambiguously provides only that "health care providers and facilities ...

must submit their charges to a health plan company ... within six months." Minn. Stat. § 62Q.75, subd. 3. It is undisputed that Nguyen is not a "health care provider" as defined in the statute. *See* Minn. Stat. § 62Q.733, subd. 3 (2016) (defining "health care provider" as "a physician, chiropractor, dentist, podiatrist, or other provider as defined under section 62J.03, other than hospitals, ambulatory surgical centers, or freestanding emergency rooms"). But although the statute expressly sets forth only requirements for a health-care provider and not an insured, a health-care provider's failure to meet these requirements does affect whether the insured experiences a loss. "A health care provider or facility that does not make an initial submission of charges within the six-month period shall not be reimbursed for the charge and may not collect the charge from the recipient of the service or any other payer." Minn. Stat. § 62Q.75, subd. 3. In this case, with the exception of one bill, CDI did not bill Western National within six months of providing treatment to Nguyen or of knowing that Western National was the responsible health-plan company.[1] Therefore, under Minn. Stat. § 62Q.75, subd. 3, CDI could not collect those charges from Western National or Nguyen.

And while it is unknown whether Nguyen personally received any bills from CDI, the no-fault act bars a health-care provider from directly billing an insured for the amount of a claim not remitted to the insurer according to the transaction standards in the no-fault act. *See* Minn. Stat. § 65B.54, subd. 1. "Claims by a health provider ... for medical expense

---

1. Nguyen also argues that Minn. Stat. § 62Q.75, subd. 3, cannot bar his claim because CDI did not know the identity of the "responsible health plan company" after Western National notified CDI that it was

denying coverage. This argument is unpersuasive. Western National's denial of coverage for a particular claim does not mean that it was not the responsible health-plan company for purposes of Minn. Stat. § 62Q.75, subd. 3.

benefits covered by this chapter shall be submitted to the reparation obligor pursuant to the uniform electronic standards required by section 62J.536." *Id.* The statute further provides:

> Payment of benefits for such claims for medical expense benefits are not due if the claim is not received by the reparation obligor pursuant to those electronic transaction standards and rules.... A health care provider cannot directly bill an insured for the amount of any such claim not remitted pursuant to the transaction standards.

*Id.* Accordingly, if the health-care provider does not follow the statutory method for submitting bills to the insurer, that claim is not due. Here, because CDI did not submit the bills to Western National, it could not have complied with the electronic-transaction standards required by Minn. Stat. § 65B.54, subd. 1. Therefore, under Minn. Stat. § 65B.54, subd. 1, CDI cannot seek payment from Nguyen.

■ Nguyen contends that even if he does not owe CDI for his medical expenses, Western National is still obligated to reimburse him because he incurred a loss under the no-fault act. His argument relies significantly on two supreme court cases. In *Stout*, the supreme court held that a no-fault insured's loss equals the amount billed for his medical expenses, not the amount the insured is ultimately obligated to pay after negotiated discounts or payments from other sources, such as payments from his health insurer. 645 N.W.2d at 113. The supreme court elaborated on this principle in *Lennartson*, holding that if an insured fully recovers claimed medical expenses through a tort action, the tort recovery does not reduce or eliminate the insured's recovery of no-fault benefits for the amount of medical expenses billed. 872 N.W.2d at 531.

But *Stout* and *Lennartson* are distinguishable. Both cases concern whether "a later event" could have a *collateral effect* on the amount of loss. *Id.* at 530. This case does not involve a subsequent event that either modified or eliminated Nguyen's amount of loss—the issue here is whether a loss ever accrued. In the no-fault context, if the health-care provider does not comply with the time requirements of Minn. Stat. § 62Q.75, subd. 3, or the submission requirements of Minn. Stat. § 65B.54, subd. 1, the insured claimant does not incur medical expense because he cannot be liable for a charge that the health-care provider "may not collect" for a bill that is "not due."

We conclude that because CDI did not submit its charges to Western National within the time period required by Minn. Stat. § 62Q.75, subd. 3, Nguyen never incurred medical expense and thus a loss never accrued. Further, because the charges presented to the arbitrator were not transmitted to Western National as required by Minn. Stat. § 65B.54, subd. 1, the benefits never became due. Therefore, Nguyen never suffered a loss for which he is entitled to no-fault benefits.

## II.

■ Nguyen also argues that the district court erred in vacating the portion of the award relating to arbitration fees. The arbitrator's award directed Western National to pay $300 for the arbitrator's fees and to reimburse Nguyen $35 for the filing fee. Western National asserts that it paid the $300 arbitrator's fee and did not ask the district court to vacate this part of the award. The district court ordered, without explanation, that this $300 award fee be vacated. Because Western National paid the $300 fee and did not ask the district court to vacate it, the district court erred in vacating the award in this respect.

The parties dispute whether the district court vacated the $35 filing fee award. Nguyen contends that the district court vacated this portion of the award. Western National asserts that the district court confirmed this aspect of the award because it was included in the costs award of $1,027.25.

Although we recognize Nguyen's concern about the phrasing of the district court's order, the only reasonable conclusion based on the record before us is that the $35 filing fee is included in the district court's award of $1,027.25 in costs. Because Western National never challenged the $35 filing fee award, and because we affirm the district court's confirmation of the award of $1,027.25 in costs, we need not address the filing fee further.

## DECISION

The district court did not err by applying Minn. Stat. § 62Q.75, subd. 3, to bar Nguyen's no-fault claim. Because we conclude that, with the exception of one bill, Nguyen did not suffer a "loss" as defined in Minn. Stat. § 65B.54, subd. 1, we affirm the district court's decision to vacate in part the arbitrator's award of medical expenses. But we reverse the district court's decision to vacate the $300 arbitrator's fee.

**Affirmed in part and reversed in part.**