SLIETER, Judge
Appellant State Farm Mutual Automobile Insurance Company (State Farm) challenges the denial of its motion to vacate respondent Sherria Nichols's no-fault arbitration award, arguing that the district court erred by concluding that Minn. Stat. § 62Q.75, subd. 3, did not bar respondent's no-fault claim. We affirm.
FACTS
On November 27, 2014, Nichols was injured in a motor-vehicle accident and transported to North Memorial Hospital (North Memorial), where she received treatment in the emergency department. At the time of the accident, Nichols was insured by a no-fault insurance policy with State Farm.
In January 2015, Nichols applied for no-fault benefits under the State Farm policy. Shortly thereafter, North Memorial submitted a $2,753.20 invoice to State Farm for Nichols's November emergency-room visit. State Farm paid the invoice.
From April 2015 through December 2015, Nichols received several additional treatments at North Memorial. The charges for these treatments were not submitted to State Farm. Instead, North Memorial submitted them to Nichols's health insurer, UCare. North Memorial submitted each charge to UCare within six months of treatment, and UCare paid each charge.
In July 2016, Nichols filed a petition for no-fault arbitration, seeking an award of $10,000 from State Farm for the health-care expenses incurred for her 2015 treatments.[1] For reasons not germane to this appeal, Nichols filed a subsequent arbitration petition in February 2017 seeking an award for the same 2015 treatments.
*336 Following a hearing, the arbitrator awarded Nichols $10,000 in economic-loss benefits for her medical expenses. State Farm filed a motion with the district court to vacate the arbitration award.
The district court denied the motion, concluding that Minn. Stat. § 62Q.75, subd. 3, unambiguously requires a health-care provider to submit its charges to a health-plan company within six months of treatment. Because, the district court ruled, North Memorial submitted its charges to UCare within six months, North Memorial complied with the statute. The district court affirmed the arbitrator's decision and this appeal follows.
ISSUE
Did the district court err in concluding that the insured was entitled to economic-loss benefits because her medical provider complied with the requirements of Minn. Stat. § 62Q.75, subd. 3 ?
ANALYSIS
State Farm argues that the district court erred by declining to vacate Nichols's no-fault arbitration award. A no-fault arbitrator has the authority to decide questions of fact; courts interpret the law. Weaver v. State Farm Ins. Cos. , 609 N.W.2d 878, 882 (Minn. 2000). Appellate courts review de novo the "arbitrator's legal determinations necessary to granting relief." Id. A dispute over no-fault coverage also presents a question of law this court reviews de novo . W. Nat'l. Ins. Co. v. Thompson , 797 N.W.2d 201, 205 (Minn. 2011).
Minnesota's No-Fault Act, Minn. Stat. §§ 65B.41 -.71 (2018), requires no-fault insurers to provide benefits for "[b]asic economic loss" from injuries "arising out of the maintenance or use of a motor vehicle." Minn. Stat. § 65B.44, subd. 1(a). These economic-loss benefits, which include medical expenses, are payable as loss accrues. Minn. Stat. § 65B.54, subd. 1. "Loss" accrues when medical expenses are incurred. Id. Medical expenses are "incur[red]" as an injured person "receives bills for medical treatment." Stout v. AMCO Ins. Co. , 645 N.W.2d 108, 113 (Minn. 2002).
State Farm argues that Minn. Stat. § 62Q.75, subd. 3 ( subdivision 3 ), bars Nichols's no-fault claim because the statute requires North Memorial to submit its charges to State Farm within six months and North Memorial failed to do so. Nichols contends that the statute unambiguously requires North Memorial to submit its charges to an insurer within six months and that by submitting its charges to UCare within six months, North Memorial complied with the statute. To reach our decision, we must interpret the statutory language in subdivision 3.
"When interpreting statutes, our function is to ascertain and effectuate the intention of the legislature." Anker v. Little , 541 N.W.2d 333, 336 (Minn. App. 1995), review denied (Minn. Feb. 9, 1996). "[W]e first look to see whether the statute's language, on its face, is clear or ambiguous." Am. Family Ins. Grp. v. Schroedl , 616 N.W.2d 273, 277 (Minn. 2000). "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." Id. (quotation omitted).
"If the statute is free from ambiguity, we look only at its plain language." Anker , 541 N.W.2d at 336. "[I]n the absence of ambiguity, [this court] will not disregard the letter of the law in the pursuit of its purpose." State v. Hicks , 583 N.W.2d 757, 759 (Minn. App. 1998), review denied (Minn. Oct. 20, 1998). "A statute should be interpreted, whenever possible, to give effect to all of its provisions; no word, phrase, or sentence should be *337 deemed superfluous, void, or insignificant." Schroedl , 616 N.W.2d at 277 (quotation omitted). But "if the statute's literal meaning leads to an absurd result ... we may look beyond the language and examine other indicia of legislative intent." Anker , 541 N.W.2d at 336. This rule, however, "is not available to override the plain language of a clear and unambiguous statute, except in an exceedingly rare case in which the plain meaning of the statute utterly confounds the clear legislative purpose of the statute." Schatz v. Interfaith Care Ctr. , 811 N.W.2d 643, 651 (Minn. 2012) (quotation omitted). The statute in question is unambiguous and its plain meaning does not lead to an absurd result.
Subdivision 3 establishes a timeline for health-care providers to "submit their charges" to health-plan companies. Minn. Stat. § 62Q.75, subd. 3. The statute provides:
[H]ealth care providers ... must submit their charges to a health plan company or third-party administrator within six months from the date of service or the date the health care provider knew or was informed of the correct name and address of the responsible health plan company or third-party administrator, whichever is later.
Id. (emphasis added).
Subdivision 3 applies to no-fault claims. Id. ("This subdivision also applies ... to reparation obligors for treatment of an injury compensable under 65B."). In W. Nat'l Ins. Co. v. Nguyen , we determined that "[i]n the no-fault context, if the health-care provider does not comply with the time requirements of Minn. Stat. § 62Q.75, subd. 3," an insured does not incur medical expenses and never accrues a loss entitling the insured to no-fault benefits. 902 N.W.2d 645, 651 (Minn. App. 2017), review granted (Minn. Nov. 28, 2017), aff'd mem. , 909 N.W.2d 341 (Minn. 2018).
State Farm argues that the phrase "responsible health plan company" in the second half of subdivision 3 modifies the phrase "a health plan company" in the first half of subdivision 3. By State Farm's interpretation, a health-care provider is required to submit its charges to the responsible health-plan company within six months of service.
We disagree. As we noted above, subdivision 3 is clear and unambiguous. Rather than modifying the phrase "a health plan company," the phrase "the responsible health plan company" relates only to the alternative timeline which may extend the six months from the "date of service" to six months from "the date the health care provider knew or was informed of the correct name and address of the responsible health plan company or third-party administrator, whichever is later." Minn. Stat. § 62Q.75, subd. 3. Put another way, the unambiguously stated sole obligation for health-care providers by this statutory language is to submit their charges to a health plan company . The unambiguously stated timeline for this submission is either six months from the date of service or six months from the date the health-care provider knew or was informed of the correct name of the responsible health-plan company, whichever is later.
Furthermore, State Farm's interpretation fails to give effect to the phrase "a health plan company," and we may not deem any word or phrase "superfluous, void, or insignificant." Schroedl , 616 N.W.2d at 277. Indeed, State Farm's interpretation eliminates the phrase "a health plan company" from the statute. We conclude that the statute unambiguously allows a health-care provider to comply with subdivision 3 by submitting its charges to *338 "a health plan company" within six months of service.
State Farm contends that this is an absurd result-the legislature would not require a health-care provider to submit charges to health-plan companies it knew were not responsible for the charges. Because subdivision 3 is clear and unambiguous, we need not reach an absurd-result analysis. As we have noted above, the rule of statutory construction concerning absurdity applies to unambiguous statutes only where the statute's "plain meaning utterly confounds the clear legislative purpose of the statute." Schatz , 811 N.W.2d at 651 (quotation omitted). Minn. Stat. § 62Q.75 (2018) is a prompt payment statute. "[T]he general purpose underlying prompt-payment statutes is to prescribe a designated time period for health insurers to pay valid claims in order to facilitate timely payment to health-care providers." Nguyen , 902 N.W.2d at 649. The plain and unambiguous language of the statute is consistent with the legislative purpose.
DECISION
We conclude that, because North Memorial complied with the requirements of subdivision 3, Nichols suffered a "loss" under the Minnesota No-Fault Act. The district court did not err in holding that subdivision 3 does not bar Nichols's no-fault claim. Therefore, the district court properly denied State Farm's motion to vacate the arbitration award.
Affirmed.

The bills totaled approximately $12,000, but Nichols waived the amount over $10,000 to remain within the arbitration limits. See Brown v. Allstate Ins. Co. , 481 N.W.2d 17, 19 (Minn. 1992) (holding no-fault claimant may waive excess to qualify for mandatory arbitration under no-fault act).