**In re THE CLAIMS FOR NO–FAULT BENEFITS AGAINST PROGRESSIVE INSURANCE COMPANY.**

Nos. A05–2020, A06–58, A06–59.

Court of Appeals of Minnesota.

Sept. 12, 2006.

Michael W. Lowden, The Lowden Law Firm, L.L.C., Bloomington, MN, for appellant Progressive Insurance Company.

Douglas E. Schmidt, Douglas E. Schmidt Law Office, Minnetonka, MN, for respondents Luis Pallares and Edgar Villafana Pallares.

Loren Dorshow, Griffel & Dorshow, Chartered, Minnetonka, MN, for respondents Pedro Sanchez and Aneth Galindo.

Mark A. Karney, Karney & Associates, Minneapolis, MN, for respondents Elizur Garcia, Maria Castrejon, Francisco Martinez, Pedro Fernandez and Blanca Bonavides.

Timothy J. Johnson, Johnson Law Office, P.A., Oakdale, MN, for respondent Elmer Minero.

Considered and decided by ROSS, Presiding Judge; SHUMAKER, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

Appellant-insurer challenges district court orders confirming ten no-fault automobile-insurance arbitration awards. Appellant argues that the district court erred by (1) denying its motion to vacate because the arbitrators lacked subject-matter jurisdiction and the awards were procured by fraud, and (2) refusing to stay proceedings in district court pending resolution of a related federal lawsuit. Appellant also challenges the district court's imposition of sanctions under Minn. R. Civ. P. 11 and respondents' motion for sanctions on appeal. We affirm in part, reverse in part, and deny the motion for sanctions on appeal.

## FACTS

These consolidated appeals arise from ten separate arbitration awards granting medical-expense benefits under the Minnesota No–Fault Automobile Insurance Act (No–Fault Act). The claimants were insured by appellant Progressive Insurance Company (Progressive) and sought treatment at Alivio Chiropractic Clinic (Alivio) for injuries received in their automobile accidents. The first arbitration award was issued on November 20, 2003, and the last award was issued on July 13, 2005.

Progressive moved to vacate the arbitration awards based on fraud or, in the

alternative, requested that the district court stay the awards pending the outcome of related federal proceedings.[1] Progressive also argued in nine cases that the arbitrators lacked subject-matter jurisdiction because Progressive had not denied those insureds' claims. Those nine cases were consolidated in Hennepin County District Court by order of the Minnesota Supreme Court. In the tenth case, that of Edgar Villafana Pallares, Progressive denied benefits. The Pallares case was litigated separately in Hennepin County District Court before a different judge. In each of the ten cases, the insured moved to confirm the arbitration award and for sanctions under Minn. R. Civ. P. 11 and Minn.Stat. § 549.211 (2004).

In an order dated August 8, 2005, the district court in the Pallares case confirmed the arbitration award and found no legal basis to stay the arbitration award pending the outcome of the federal lawsuit. In a subsequent order dated November 28, 2005, the district court imposed $1,500 in sanctions against Progressive. In the nine consolidated cases, in an order dated November 18, 2005, the district court denied Progressive's motion for a stay, confirmed the nine arbitration awards, and imposed sanctions on Progressive in the amount of $1,500 for each insured. Progressive appealed each decision, and we consolidated the cases for appellate review.

## ISSUES

I. Did the district court err in denying Progressive's motion to vacate the arbitration awards based on the claim that the arbitrators exceeded their authority when they considered claims for medical-expense benefits that had not been denied but were under investigation?

II. Did the district court err in denying Progressive's motions to vacate the arbitration awards based on fraud by medical-service providers?

III. Did the district court violate Progressive's procedural-due-process rights when it declined to hold evidentiary hearings relating to the alleged fraud?

IV. Did the district court abuse its discretion when it declined to stay the arbitration awards until the resolution of a related federal lawsuit?

V. Did the district court abuse its discretion when it imposed sanctions against Progressive?

VI. Should Pallares's motion for sanctions on appeal be granted?

## ANALYSIS

### I.

■ Progressive claims that the district court erred in denying its motion to vacate the arbitration awards in the nine consolidated cases because the arbitrators exceeded their powers when they arbitrated claims for benefits that had not been denied by Progressive. Under the Minnesota Uniform Arbitration Act, upon application of a party, a reviewing court shall vacate an arbitration award when (1) the award was procured by fraud, corruption, or other undue means; (2) there was evident partiality, prejudicial misconduct, or corruption of the arbitrator; (3) the arbitrator exceeded his or her powers; (4) improper conduct of the hearing resulted in substantial prejudice; or (5) there was no arbitration agreement. Minn.Stat. § 572.19, subd. 1 (2004). Whether an arbi-

---

1. Progressive filed suit in federal district court on May 18, 2005, alleging that Alivio and other associated service providers, in-

cluding the attorney for five respondents, engaged in racketeering to defraud Progressive through overbilling.

trator exceeded his or her authority is a question of law, which we review de novo. *Klinefelter v. Crum & Forster Ins. Co.*, 675 N.W.2d 330, 333 (Minn.App.2004).

Rather than denying the claims for benefits, Progressive issued form letters noting that the claim had been received but that further information was needed. To describe the information that was needed, a box labeled "Other (see below for details)" was checked. Below this box was a line stating "Details: pending further investigation." Progressive maintains that, under the rules for arbitration of no-fault automobile-insurance claims, arbitration may be initiated only after there has been a denial of a claim. Accordingly, Progressive argues, the arbitrators lacked subject-matter jurisdiction to consider the claims in the consolidated cases.

Under Minnesota's statutory scheme for no-fault automobile insurance, claims for benefits that are $10,000 or less are subject to mandatory arbitration. Minn.Stat. § 65B.525, subd. 2 (2004). Progressive relies on Minn. R. No-Fault Arb. 5 to support its assertion that arbitrators obtain subject-matter jurisdiction only after a claim is denied. *See* Minn.Stat. § 65B.525, subds. 1, 2 (2004) (authorizing court rules providing for no-fault arbitration procedure). Rule 5 provides: "At such time as the [insurer] denies a claim, the [insurer] shall advise the claimant of claimant's right to demand arbitration." Minn. R. No-Fault Arb. 5(a). A claim is deemed denied if an insurer "fails to respond in writing within 30 days after reasonable proof of the fact and the amount of loss is duly presented" to the insurer. Minn. R. No-Fault Arb. 5(d). But regardless of whether Progressive's response to the claims at issue here constitutes a denial, Progressive's argument that rule 5 governs the arbitrator's subject-matter jurisdiction is without merit.

The language of the No-Fault Act as enacted in 1974 establishes that the no-fault arbitration rules are merely procedural. The section of the act that grants jurisdiction to the arbitrators is titled "MANDATORY ARBITRATION OF CERTAIN CLAIMS; SUPREME COURT TO PROMULGATE RULES OF PROCEDURE." 1974 Minn. Laws ch. 408, § 12, at 776. The current statute provides that "the [s]upreme [c]ourt and the several courts of general trial jurisdiction of this state shall by rules of court or other constitutionally allowable device, provide for the mandatory submission to binding arbitration of all cases at issue where the claim ... is in an amount of $10,000 or less ... for no-fault benefits...." Minn.Stat. § 65B.525, subd. 1. And the Minnesota Supreme Court has observed that the "jurisdictional mandate for arbitration" arises from the monetary threshold. *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 804 (Minn. 2004). The supreme court reasoned:

> The No-Fault Act provides that arbitration is mandatory to resolve all claims ... in an amount of $10,000 or less. Black's Law Dictionary defines "claim" as "[t]he aggregate of operative facts giving rise to a right enforceable by a court." We have defined "claim" in the context of the arbitration provisions of the No-Fault Act as the amount the claimant is asking for.

*Id.* at 803–04 (quotations and citation omitted).

■ Under Progressive's theory, an insured does not have a "claim" until benefits have been denied. But the language of *Ill. Farmers* suggests otherwise. Arbitrators have mandatory jurisdiction to consider "claims" when the amount of the claim is $10,000 or less. *Id.* As such, rule 5(a) is properly viewed as a notice provision requiring only that insurers provide

certain information to insureds whose claims have been denied. Thus, because subject-matter jurisdiction arises from the monetary amount of the claim, not the insurer's denial of the claim, the arbitrators did not exceed their authority when they evaluated the claims for no-fault benefits in the nine cases in which the claims were not denied.[2]

Because the no-fault insurance benefits claims were in the amount of $10,000 or less, the arbitrators had subject-matter jurisdiction over the claims, and the district court did not err in denying the motion to vacate the nine awards on this ground.

## II.

Progressive next argues that the arbitration awards should be vacated under Minn.Stat. § 572.19, subd. 1(1), because they were procured by fraud. Progressive claims that Alivio and associated service providers overbilled for their services, rendering the bills submitted in the arbitration hearings fraudulent. Progressive admits that the insureds were unaware of, and did not participate in, any fraudulent activity on the part of Alivio and its associates. Relying on this admission, the district court determined that there was no basis to vacate the awards on grounds of fraud. Moreover, in the Pallares case, the district court noted that the issue of overbilling was a fact determination that had already been considered and decided by the arbitrator. Progressive argues on appeal that the alleged fraud by Alivio and its associates should have been considered by the district court.

■ As an initial matter, Progressive's argument requires consideration of whether, for purposes of the No–Fault Act, an arbitration award may be vacated under section 572.19 based on fraud by one who was not a party to the arbitration proceeding. Alivio and its associates were not parties to the arbitration proceedings or the district court proceedings.[3] The Minnesota Uniform Arbitration Act, Minn. Stat. §§ 572.08–.30 (2004), governs the rights and duties of the parties before the arbitrator. *See State ex rel. Hatch v. Cross Country Bank,* 703 N.W.2d 562, 569 (Minn.App.2005) (holding that state as third party was not bound by arbitration agreement in individuals' contracts with credit-card company). Our extensive research has not produced, nor has Progressive cited, any legal authority wherein an arbitration award in Minnesota has been

2. The district court concluded that the arbitrators did not exceed their authority on the ground that, by indefinitely delaying payment and providing the insureds with no information about how or when its investigation would conclude, Progressive constructively denied the claims. We affirm this conclusion for reasons other than constructive denial. Progressive relies on *Weaver v. State Farm Ins. Cos.* for authority supporting the reasonableness of its failure to pay or deny claims within 30 days. 609 N.W.2d 878, 885 (Minn. 2000); *see* Minn. R. No–Fault Arb. 5(d) (deeming insurer's failure to respond to claim within 30 days a denial). But the reasonableness of Progressive's actions has no bearing on whether the arbitrator lacked subject-matter jurisdiction over the claims. In *Weaver,* the Minnesota Supreme Court recognized that

it may "at times [take] more than 30 days to investigate a claim." 609 N.W.2d at 885. But *Weaver* also determined that the reasonableness of an investigation is a question of fact for the arbitrator. *Id.* at 884–85. Although decided in the context of an independent medical examination, *Weaver's* analysis supports our conclusion that suspension of a claim pending investigation does not affect the jurisdiction of the arbitrator. Rather, it poses a question of fact that may influence the result of the arbitration proceeding.

3. Progressive argues that Alivio essentially was a party because the insureds had assigned their benefits to Alivio. But Progressive did not present evidence of such an assignment.

vacated for fraud committed by one who was not a party to the arbitration. *See* 6A Steven J. Kirsch, *Minnesota Practice* § 57.18 (3d ed.1990) (noting that Minn. Stat. § 572.19, subd. 1(1), refers to misconduct of opposing parties); *see also Aaron v. Ill. Farmers Ins. Group,* 590 N.W.2d 667, 670 (Minn.App.1999) ("Minn.Stat. § 572.19, subd. 1(2), proscribes prejudicial misconduct on the part of an arbitrator, not a party.... Misconduct by one of the parties falls under Minn.Stat. § 572.19, subd. 1(1)....").

■ We do not intend to encourage an arbitrator or a district court to ignore evidence of fraud when presented. In seeking to vacate an award for fraud, "the burden of the assault rests with the attacking party, and to prevail he must establish the fraud ... by clear allegations and proof." *Mork v. Eureka–Sec. Fire & Marine Ins. Co.,* 230 Minn. 382, 391, 42 N.W.2d 33, 38 (1950). But Progressive did not plead fraud with specificity and presented no evidence of fraud apart from a photocopy of the federal complaint against Alivio. *See Abd Alla v. Mourssi,* 680 N.W.2d 569, 574 (Minn.App.2004) (holding that mere allegation that arbitrator had ex parte communication with interested third party does not demonstrate fraud, corruption, or other undue means). Progressive also failed to present evidence of fraud in the arbitration hearings. It is evident from the record that Progressive failed to meet its burden of pleading and proving that it is entitled to vacation of the arbitration awards on the ground of fraud under Minn.Stat. § 572.19, subd. 1(1).

Progressive argues that this is a special case in which it was precluded from submitting evidence of fraud during arbitration in order to prevent its investigation from being compromised. But the No-Fault Act provides an insurer with concerns similar to those of Progressive with a remedy if the insurer pays

> benefits which are not payable, but are in fact paid, because of an intentional misrepresentation of a material fact ... by a person providing products or services for which basic economic loss benefits are payable. *The action may be brought only against the person providing the products or services,* unless the claimant has intentionally misrepresented the facts or knew of the misrepresentation.

Minn.Stat. § 65B.54, subd. 4 (2004) (emphasis added). As between vacating an otherwise valid arbitration award under section 572.19 and pursuing a separate cause of action against the third-party medical-service provider for fraud, the legislature has made clear its preference through enactment of section 65B.54. On the record before us, Progressive's remedy for alleged fraudulent practices by medical-service providers does not lie under section 572.19. The district court, therefore, did not err in denying Progressive's motions to vacate the arbitration awards based on fraud.

### III.

■ Progressive maintains that the district court's refusal to hold evidentiary hearings on the issue of whether the awards in these consolidated appeals were procured by fraud violated the right to procedural due process. We review de novo the process afforded a party to determine whether it is constitutionally infirm. *Zellman ex rel. M.Z. v. Indep. Sch. Dist. No. 2758,* 594 N.W.2d 216, 220 (Minn.App. 1999), *review denied* (Minn. July 28, 1999).

■ The United States Constitution guarantees the right to due process of law. U.S. Const. amends. V, XIV. "The fundamental requirement of due process is the opportunity to be heard at a meaningful

time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quotation omitted). When considering a procedural-due-process challenge, we apply a balancing test to determine whether the process adequately balances the private interest at stake, the risk that the process utilized will result in erroneous deprivation of the private interest, the probable value of additional procedural safeguards, and the state's interest in the procedures provided, including the administrative burden and expense additional procedures would require. *In re Conservatorship of Foster,* 547 N.W.2d 81, 85 (Minn.1996).

▮▮▮▮ Progressive was afforded all the procedural safeguards ordinarily provided to a party in an arbitration proceeding. Progressive chose not to present evidence of fraud in those proceedings and, thus, did not give the arbitrators the opportunity to develop a factual record on the alleged fraud. When reviewing an arbitration award, the district court's role is not to develop additional facts relating to the claim. *Liberty Mut. Ins. Co. v. Sankey,* 605 N.W.2d 411, 413–14 (Minn.App.2000), *review denied* (Minn. Apr. 18, 2000). Rather, its role is limited to determining whether any of the statutory grounds for vacating the award exists. *Id.* Because Progressive admitted that there was no evidence of fraud by the insureds or the arbitrators entitling it to vacation under Minn.Stat. § 572.19, subd. 1(1), any evidence of fraud by the service providers presented in an evidentiary hearing would address claims for relief under Minn.Stat. § 65B.54, subd. 4, which were not before the district court. Because an evidentiary hearing would have created an additional administrative burden on the district court, without any additional protection of Progressive's interests, Progressive's procedural-due-process argument fails.

**IV.**

Progressive sought a stay of the proceedings in each case pending the resolution of its federal lawsuit. In the Pallares case, the district court found that the initiation of a civil action against Alivio in federal court did not establish a legal basis to stay the arbitration award. In the nine consolidated cases, the district court denied Progressive's motion to stay the awards. Progressive now challenges these decisions.

▮▮▮▮ We review the district court's denial of a stay pending the outcome of the federal proceedings for an abuse of discretion. *Medtronic, Inc. v. Advanced Bionics Corp.,* 630 N.W.2d 438, 449 (Minn.App. 2001). "In deciding whether to defer to another court, a trial judge must determine which action will best serve the parties' need for a comprehensive solution, consider judicial economy, cost and convenience to the litigants, and assess the possibility of overlapping multiple determinations of the same dispute." *Green Tree Acceptance, Inc. v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis,* 433 N.W.2d 140, 142 (Minn.App.1988). We consider these factors in light of the purposes of Minnesota's No–Fault Act, which include to "speed the administration of justice, to ease the burden of litigation on the courts of this state, and to create a system of small claims arbitration to decrease the expense of and to simplify litigation...." Minn.Stat. § 65B.42(4) (2004). Granting Progressive's request for a stay would not have served the interests of the insureds, the purposes of the No–Fault Act, or judicial economy. Payment of the arbitration awards at issue here has already been delayed for years. And supplemental information provided to this court indicates that, during a portion of this time, Progressive's federal lawsuit has been stayed

pending a criminal investigation into Alivio's billing practices.[4] *See In re Livingood,* 594 N.W.2d 889, 895–96 (Minn.1999) (noting that court of appeals may consider documentary evidence not provided to district court if evidence is uncontroverted and supportive of district court's decision).

Granting the relief Progressive seeks would contravene the purposes of the No–Fault Act. In *Wolf v. State Farm Ins. Co.,* we determined that an insured has a right to basic economic-loss benefits under the No–Fault Act. 450 N.W.2d 359, 362 (Minn. App.1990), *review denied* (Minn. Mar. 16, 1990). Several statutory provisions express the legislature's preference for immediate payment of benefits with later recovery of unwarranted payment over indefinite suspension of payments. For example, benefits are considered overdue if not paid within 30 days after submission of reasonable proof of the claim and are subject to interest accrual. Minn.Stat. § 65B.54, subds. 1, 2 (2004). And as addressed above, section 65B.54 allows insurers to recover benefits that are paid and later proven to be fraudulently procured under circumstances identical with those alleged here. The district court was well within its discretion when it denied the motions to stay.

## V.

### A.

On October 17, 2005, Pallares moved the district court for sanctions under Minn. R. Civ. P. 11 and Minn.Stat. § 549.211 (2004). In its order dated November 28, 2005, the district court granted the motion and imposed sanctions of $1,500. Progressive ar-

gues that Pallares's motion for sanctions was untimely because the underlying claim had been resolved by an order confirming the arbitration award on August 8, 2005. As a result, Progressive had no opportunity to withdraw or correct its pleading on receipt of the notice of motion for sanctions.

▮ A motion for sanctions under rule 11 "shall not be filed with or presented to the [district] court unless, within 21 days after service of the motion (or such other period as the [district] court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Minn. R. Civ. P. 11.03(a)(1); *see* Minn.Stat. § 549.211, subd. 4(a) (2004) (providing essentially the same service and filing requirement). A district court abuses its discretion if it imposes sanctions when the moving party has not complied with the so-called "safe-harbor provision" "because the offending party is unable to withdraw the improper papers or otherwise rectify the situation." *Gibson v. Coldwell Banker Burnet,* 659 N.W.2d 782, 790 (Minn.App. 2003) (quotation omitted).

Pallares did not comply with the safe-harbor provision when he served and filed his motion for sanctions after the order confirming the contested arbitration award had issued. The district court's imposition of sanctions was an abuse of discretion and, therefore, is reversed.

### B.

▮ In the nine consolidated cases, the district court also imposed sanctions of $1,500 for each insured. The order nei-

---

4. We also observe that, in an order dated May 16, 2006, the federal district court denied Progressive's motion for a preliminary injunction to enjoin future submission of no-fault insurance claims and arbitration petitions related to services provided by Alivio. In doing so, the federal district court found that Pro-

gressive had not made a sufficient showing of irreparable harm because any injury could be adequately remedied by monetary damages. *Progressive N. Ins. Co. v. Alivio Chiropractic Clinic, Inc.,* No. 05–0951 (PAM/RLE), 2006 WL 1371672 (D.Minn. May 16, 2006) (order).

ther contained findings of fact related to the sanctions nor addressed the conduct that the district court found objectionable. Both section 549.211 and rule 11 require the district court when imposing sanctions to make factual findings as to the improper conduct and explain the basis for the sanction. Minn.Stat. § 549.211, subd. 5(c) (2004); Minn. R. Civ. P. 11.03(c). The district court abused its discretion when it imposed sanctions without complying with these requirements. Accordingly, we reverse the imposition of sanctions in the nine consolidated cases.

## VI.

 Respondents moved this court for sanctions on May 15, 2006. But respondents failed to cite any legal authority in that motion for imposing sanctions. The appellate rules prescribe the procedure for seeking attorney fees but do not provide a substantive basis for awarding fees. Minn. R. Civ.App. P. 139.06 1998 advisory comm. cmt. Were we to construe the motion as submitted under Minn.Stat. § 549.211, deficiencies in the motion would preclude us from granting relief. The motion was not served at least 21 days in advance of filing, as required by Minn.Stat. § 549.211, subd. 4(a), and the motion did not identify the pleadings or assertions alleged to be unfounded to afford Progressive the required opportunity to correct or withdraw them. Nor, in light of the relief obtained by Progressive, can we characterize the appeals as taken merely to delay proceedings on the underlying judgment, the showing required for an award of damages or costs under Minn. R. Civ.App. P. 138. We, therefore, deny the motion for sanctions on appeal.

## DECISION

Because the claims for benefits were for amounts of $10,000 or less, the arbitrators had subject-matter jurisdiction to arbitrate the claims even without a formal denial of benefits by Progressive. Because Progressive presented no evidence of fraud by the insureds, the district courts properly denied Progressive's motions to vacate based on fraud. Progressive's requests to stay proceedings pending completion of a related federal lawsuit were properly denied because a stay would not have served judicial economy, the interests of the insureds, or the purposes of the No–Fault Act. Accordingly, the confirmation of the arbitration awards is affirmed. But it was an abuse of discretion to impose sanctions on Progressive absent compliance with the safe-harbor provision and the requirement that an order imposing sanctions identify the offending conduct and explain the basis for the sanctions imposed. Thus, the imposition of sanctions is reversed. We also deny the motion for sanctions on appeal.

**Affirmed in part and reversed in part; motion denied.**