# STATE OF MINNESOTA
## IN COURT OF APPEALS
## A15-0843

Stand Up Multipositional Advantage MRI, P.A.,
Respondent,

vs.

American Family Insurance Company,
a Wisconsin corporation,
Appellant,

Michael Schultz, et al.,
Respondents,

Ilya Knyazev, et al.,
Respondents,

Thomas Bennerotte, et al.,
Respondents,

Jed Benjamin Iverson,
Respondent,

Gabriel Johnson,
Respondent,

Michael Fay, et al.,
Respondents,

Brad Ratgen, et al.,
Respondents,

Landon Barakow,
Respondent,

Lebertha Porter,
Respondent.

Hennepin County District Court
File No. 27-CV-13-14614

Randall D. B. Tigue, Randall Tigue Law Office, P.A., Golden Valley, Minnesota (for respondent Stand Up Multipositional Advantage MRI, P.A.)

Matthew D. Lutz, Eden Prairie, Minnesota (for appellant)

Michael Schultz, Sommerer & Schultz, Minneapolis, Minnesota (attorney pro se and for Teri Baker)

Ilya Knyazev, Instant Legal Assistance, L.L.C., Minneapolis, Minnesota (attorney pro se and for Vincent Tillotson and Leila Said)

Thomas Bennerotte, Bennerotte & Associates, P.A., Eagan, Minnesota (attorney pro se and for Tiffani Mazzie)

Jed Benjamin Iverson, Law Office of Jed Benjamin Iverson, St. Paul, Minnesota (attorney pro se)

Gabriel Johnson, Thibodeau Johnson & Feriancek, PLLP, Duluth, Minnesota (attorney pro se)

Michael Fay, Minneapolis, Minnesota (attorney pro se and for Yusuf Osman)

Brad Ratgen, Ratgen Personal Injury Law Firm, St. Paul, Minnesota (attorney pro se and for Prisly Arredondo Cerna)

Landon Barakow, St. Paul, Minnesota (pro se respondent)

Lebertha Porter, Minneapolis, Minnesota (pro se respondent)

Jennifer E. Olson, TSR Injury Law, Bloomington, Minnesota (for amicus curiae Minnesota Association for Justice)

Michael J. Weber, Weber & Nelson Law Office, PLLC, Minneapolis, Minnesota (for amici curiae Center for Diagnostic Imaging, Minnesota Chiropractic Association, Minnesota

Ambulatory Surgery Center Association, Twin Cities Orthopedics, Minnesota Medical Group Management Association)

Considered and decided by Worke, Presiding Judge; Johnson, Judge; and Hooten, Judge.

## S Y L L A B U S

A patient's assignment of a no-fault insurance claim to a medical provider is invalid and unenforceable if the applicable automobile insurance policy forbids such an assignment and if the patient makes the assignment before the medical provider bills the patient for medical services.

## O P I N I O N

**JOHNSON**, Judge

This appeal presents the question whether an assignment of a no-fault insurance claim to a medical provider is valid and enforceable if the applicable insurance policy states that assignments are forbidden. Applying the caselaw concerning anti-assignment provisions in insurance policies and the plain language of the Minnesota No-Fault Automobile Insurance Act, Minn. Stat. §§ 65B.41-.71 (2014), we conclude that the assignments at issue in this appeal are invalid and unenforceable for purposes of the No-Fault Act because the applicable automobile insurance policy contains an anti-assignment provision and because the assignments were made before the assignors' medical provider billed the assignors for the medical services on which the assignments are based. Therefore, we reverse the judgment of the district court.

3

**FACTS**

Stand Up Multipositional Advantage MRI, P.A. (SUMA), operates a clinic in Golden Valley that performs magnetic-resonance-imaging scans (MRIs). Whenever a person asks SUMA to perform an MRI, SUMA asks the person to sign a one-page assignment and lien agreement. The third paragraph of one such agreement states as follows:

> *I hereby assign to [SUMA] to the extent permitted by law, but only to the extent of my Charges, all of my claims to, rights to, and interests in, Proceeds, whether resolved or unresolved, including without limit ownership rights, which I may have now or in the future relating directly or indirectly to my Charges, condition, or causes of my condition ("Claims to Proceeds"), including without limit any and all causes of action, receivables, payment intangibles, and remedies that I might have against or with respect to any Payer now or in the future, and the right to prosecute, seek, settle, or otherwise resolve such Claims to Proceeds either in my name or in [SUMA's] name and as [SUMA] otherwise sees fit.* I agree that this assignment shall be effective as of the date and time the initial cause of my condition occurred. I further intend for this Assignment & Lien to create a security interest under the applicable Uniform Commercial Code. Accordingly, I hereby grant to [SUMA] a primary, non-contingent security interest in all of my Claims to Proceeds to the extent permitted by law for the purpose of securing payment of my Charges, the attachment and perfection of which shall relate back to, and be effective as of, the date and time that the initial cause of my condition occurred. I further authorize [SUMA] to file the form(s) normally filed with the secretary of state or other governmental agency relating to such security interests, and to make such filings in all relevant jurisdictions as [SUMA] sees fit in its sole discretion. I agree that once payment in-full has been made towards all outstanding Charges to the full extent permitted by law or contract and also as defined by my agreement with [SUMA], such security interest shall be removed or terminated solely upon my written request sent through the U.S. Postal Service Certified Mail. *Consistent with*

4

> *these terms, I hereby direct any and all Payers, to pay the Proceeds directly to, immediately to, and exclusively in the name of, [SUMA] to the full extent of my Charges.* To the extent that any law, including without limit a lien statute, purports to limit, reduce, or modify the distribution of Proceeds in any manner inconsistent with this Assignment & Lien including without limit through the reservation of a portion of the Proceeds exclusively to me, I hereby waive such limits, reductions, or modifications. Such waiver shall not adversely affect or prejudice any rights which [SUMA] may have and elect to exercise under said law.

(Emphases added.)

American Family Insurance Company issues automobile insurance policies to persons residing in Minnesota. American Family has issued automobile insurance policies that provide coverage for persons who are parties to this action. Those policies include the following language: "Interest in this policy may be assigned only with our written consent."

In July 2013, SUMA commenced this action against 16 defendants. The first defendant named in the complaint is American Family. SUMA seeks to recover damages from American Family for its alleged failure to make payment directly to SUMA pursuant to assignments that SUMA received from certain persons who were entitled to no-fault benefits from American Family. SUMA also sought to recover statutory interest, attorney fees, and costs.

SUMA also named 15 individuals as defendants. Eight individual defendants are persons who were injured in automobile accidents and received MRI services from SUMA. Seven individual defendants are attorneys who represented the eight patients in their efforts to recover compensation for the injuries they sustained in automobile accidents. SUMA's claims against the 15 individual defendants are not directly at issue in this appeal. Rather,

5

this appeal is based on the rights and obligations of American Family and SUMA with respect to medical expenses incurred by three of SUMA's former patients (Teri Baker, Prisly Arredondo Cerna, and Tiffani Mazzie). Each of them was injured in an automobile accident, sought an MRI from SUMA, was asked by SUMA to sign an assignment and lien agreement, and did so. Each submitted a claim to American Family for reimbursement of the expenses of the MRI performed by SUMA, in amounts ranging from $5,089.80 to $5,793.60, but had the claim denied by American Family. Each pursued no-fault insurance proceeds in arbitration, received an arbitration award, and received payment from American Family to satisfy the arbitration award.

In August 2014, American Family moved for summary judgment on SUMA's claims with respect to the eight patients who received MRIs. In the course of briefing, SUMA conceded that summary judgment in favor of American Family was appropriate with respect to the medical expenses incurred by four of the eight patients (Vincent Tillotson, Leila Said, Landon Barakow, and Yusuf Osman). At the hearing on American Family's motion, SUMA orally requested summary judgment in its favor on its claims against American Family. American Family did not object to the oral nature or the timeliness of SUMA's motion.

In November 2014, the district court issued an interim order on American Family's and SUMA's respective motions for summary judgment. The district court granted American Family's motion in part based on SUMA's concession concerning Tillotson, Said, Barakow, and Osman. The district court also granted American Family's motion in part concerning one patient (Lebertha Porter) for whom there was no evidence in the record

6

of an executed assignment and lien agreement. With respect to SUMA's claims against American Family concerning Baker, Cerna, and Mazzie, the district court reasoned that their assignments are valid but that the enforceability of those assignments depends on whether American Family had notice of the assignments. The district court requested supplemental briefing and additional evidence on that issue. SUMA and American Family subsequently submitted supplemental briefing and additional evidence.

In April 2015, the district court determined that American Family had notice of Baker's, Cerna's, and Mazzie's respective assignments to SUMA. Consequently, the district court denied American Family's motion for summary judgment and granted SUMA's motion for summary judgment on SUMA's claims against American Family concerning the medical expenses incurred by Baker, Cerna, and Mazzie. The district court, however, declined to award SUMA statutory interest, attorney fees, or costs.

American Family filed a timely notice of appeal. American Family argues that the district court erred for three reasons. American Family argues that the assignments to SUMA are invalid and unenforceable because Baker, Cerna, and Mazzie executed their assignments before they incurred a loss for purposes of the No-Fault Act. American Family argues that SUMA's alleged liens are invalid under article 9 of the U.C.C. And American Family argues that, to the extent that SUMA has a valid assignment of a claim for medical expenses, SUMA is required by the No-Fault Act to pursue each claim of less than $10,000 in a separate arbitration. *See* Minn. Stat. § 65B.525, subd. 1 (2014). SUMA filed a timely notice of related appeal. *See* Minn. R. Civ. App. P. 106. SUMA challenges the district

court's judgment by arguing that the district court erred by not awarding statutory interest, attorney fees, or costs.

## ISSUE

Are Baker's, Cerna's, and Mazzie's assignments of no-fault claims to SUMA valid and enforceable in light of the anti-assignment provision in American Family's automobile insurance policies and the undisputed fact that Baker, Cerna, and Mazzie executed their respective assignments before SUMA billed them for medical services?

## ANALYSIS

A district court must grant a motion for summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the nonmoving party. *Frieler v. Carlson Mktg. Grp.*, 751 N.W.2d 558, 564 (Minn. 2008). This court applies a *de novo* standard of review to the district court's legal conclusions on summary judgment and views the evidence in the light most favorable to the party against whom summary judgment was granted. *Commerce Bank v. West Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015).

We begin by considering American Family's argument that the district court erred by determining that the assignments given by Baker, Cerna, and Mazzie to SUMA are valid

8

and enforceable.[1]  In general, an anti-assignment provision in a contract is valid and enforceable, thereby defeating an otherwise valid assignment.  *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 270, 274 (Minn. 2004).  But anti-assignment provisions in insurance policies are subject to different treatment.  In Minnesota, an anti-assignment provision in an insurance policy is unenforceable with respect to a post-loss

---

[1]The question whether the assignments are valid is properly before this court and is the natural starting point of a straightforward analysis of the parties' respective arguments. Only if that question were answered in the affirmative would it be necessary to consider whether the assigned claims must be resolved in arbitration, in which case a district court would not have jurisdiction to resolve the claims.  *See* Minn. Stat. § 65B.525, subd. 1; *Illinois Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 800 (Minn. 2004).  The jurisdictional issue depends on the existence of certain predicate facts, such as, in this case, the validity of the assignments.  No particular purpose would be served by assuming a predicate fact to exist if it does not exist.  The district court plainly had jurisdiction to the extent that the district court considered whether the assignments are valid.  *See Illinois Farmers Ins. Co.*, 683 N.W.2d at 803-05; *Fernow v. Gould*, 835 N.W.2d 8, 11 (Minn. 2013).  No party to the appeal has argued otherwise.  Because we conclude below that the assignments are invalid and unenforceable, we need not consider American Family's argument based on the mandatory-arbitration provision of the No-Fault Act, which means that we need not consider whether the district court lacked jurisdiction when it entered judgment on SUMA's claims.

We note that SUMA contends that American Family failed to preserve its argument that the assignments are invalid and unenforceable.  In its motion for summary judgment, American Family initially assumed without conceding the validity of the assignments and sought summary judgment on other grounds.  The disputed issues changed, however, when SUMA orally moved for summary judgment in its favor.  The district court thereafter considered the validity of the assignments.  Indeed, that issue was the focal point of the district court's subsequent orders, including the order in which the district court ultimately ruled on American Family's and SUMA's respective motions.  The purpose of the preservation rule is to ensure that an appellate court does not consider an issue that a district court did not have an opportunity to consider.  *See Thiele v. Stich*, 425 N.W.2d 580, 582-83 (Minn. 1988); *In re Judicial Ditch No. 1*, 140 Minn. 1, 3-4, 167 N.W. 124, 125 (1918). In this case, the district court had an opportunity to consider the validity and enforceability of the assignments and actually did so.  Thus, given the unusual procedural history of this case, American Family has not forfeited the argument that Baker's, Cerna's, and Mazzie's assignments to SUMA are invalid and unenforceable.

assignment, thereby making a post-loss assignment valid and enforceable. *Windey v. North Star Farmers Mut. Ins. Co.*, 231 Minn. 279, 283, 43 N.W.2d 99, 101-02 (1950). In the majority of states, an anti-assignment provision in an insurance policy is enforceable with respect to a pre-loss assignment, thereby making a pre-loss assignment invalid and unenforceable. *See Star Windshield Repair, Inc. v. Western Nat. Ins. Co.*, 768 N.W.2d 346, 349-50 & n.6 (Minn. 2009); *see also id.* at 351 & n.1 (G.B. Anderson, J., concurring). The Minnesota Supreme Court has not expressly adopted the majority rule. *See id.* at 349-50 & n.6. But no member of the supreme court in *Star Windshield* expressed disapproval of the majority rule. *See id.* at 349-50 & n.6; *id.* at 351 & n.1 (G.B. Anderson, J., concurring). We interpret *Star Windshield* to be a strong indication that the supreme court would apply the majority rule with respect to pre-loss assignments if asked to determine the validity and enforceability of an anti-assignment provision in an insurance policy. Thus, we will apply the majority rule to the anti-assignment provision in this case.

Accordingly, to resolve American Family's argument, we must determine whether the assignments at issue in this case are pre-loss assignments or post-loss assignments. The answer to that question depends on when Baker, Cerna, and Mazzie sustained a loss for purposes of their no-fault claims. The No-Fault Act speaks directly to the issue. The pertinent statute states, in relevant part, "Loss accrues not when injury occurs, but as . . . medical . . . expense is incurred." Minn. Stat. § 65B.54, subd. 1. The supreme court's caselaw defines the timing of such a loss more specifically: "an injured person incurs medical expense [under the No-Fault Act] *as he or she receives bills for medical treatment.*" *Stout v. AMCO Ins. Co.*, 645 N.W.2d 108, 113 (Minn. 2002) (emphasis added).

10

The supreme court applied this principle recently by concluding that a person insured by an automobile insurance policy "incurred a medical-expense loss *at the moment she was billed for medical services*." *State Farm Mut. Auto. Ins. Co. v. Lennartson*, 872 N.W.2d 524, 530 (Minn. 2015) (emphasis added). The supreme court in *Lennartson* stated further, "Our analysis of 'loss' in *Stout* applies to the language of the No-Fault Act; it is not limited to the specific facts of [*Stout*]." *Id.* at 530. In light of the plain language of the No-Fault Act and the supreme court's opinions in *Stout* and *Lennartson*, a patient's assignment of a no-fault insurance claim to a medical provider is invalid and unenforceable if the applicable automobile insurance policy forbids such an assignment and if the patient makes the assignment before the medical provider bills the patient for medical services.

The only remaining question is whether SUMA billed Baker, Cerna, and Mazzie before or after they executed their respective assignment agreements. SUMA submitted an affidavit into the summary-judgment record that states that "before any auto accident victim receives a scan from [SUMA], [SUMA] requires the auto accident victim to execute an Assignment and Lien," and that "[u]nless the patient signs such an Assignment and Lien, the patient does not receive a scan from [SUMA]." The summary-judgment record does not include any evidence stating more specifically that SUMA bills patients for MRIs only after the MRIs are performed. But that is the only reasonable inference in light of the evidence in the summary-judgment record. A genuine issue of material fact does not exist because SUMA's counsel informed the district court during the motion hearing that the parties agreed that the case should be resolved on cross-motions for summary judgment. Thus, given the summary-judgment record in this case, there is no genuine issue of material

11

fact as to when SUMA billed Baker, Cerna, and Mazzie for their MRIs. The undisputed facts compel the conclusion that SUMA billed Baker, Cerna, and Mazzie *after* they assigned their respective no-fault claims to SUMA.

Thus, we conclude that the assignments at issue in this appeal are pre-loss assignments. *See* Minn. Stat. § 65B.54, subd. 1; *Lennartson*, 872 N.W.2d at 530; *Stout*, 645 N.W.2d at 113. Accordingly, the anti-assignment clause in American Family's automobile insurance policy is valid and enforceable, which means that Baker's, Cerna's, and Mazzie's pre-loss assignments to SUMA are invalid and unenforceable. *See Star Windshield*, 768 N.W.2d at 349-50 & n.6; *Windey*, 231 Minn. at 283, 43 N.W.2d at 101-02; *see also Star Windshield*, 768 N.W.2d at 351 & n.1 (G.B. Anderson, J., concurring).[2] Therefore, the district court erred by denying American Family's motion for summary judgment and granting SUMA's motion for summary judgment on SUMA's claim against

---

[2]We acknowledge that the court's conclusion may unsettle SUMA's expectations and the expectations of persons who have given and received assignments similar to the assignments in this case. The court does not reach its conclusion based on the advantages and disadvantages of the various policy-based arguments urged by the parties and by the organizations that submitted *amicus* briefs. Rather, the court reaches its conclusion by interpreting and applying the plain language of the No-Fault Act and the clear statements in *Stout* and *Lennartson*. This is the analysis required by the supreme court's caselaw. *See Lennartson*, 872 N.W.2d at 530; *Stout*, 645 N.W.2d at 113. Only a few months ago, the supreme court applied the same statute in a similar manner and reached a decision that one justice described as "counter-intuitive," "not necessarily reasonable," and "inconsistent with the purposes of the No-Fault Act." *Lennartson*, 872 N.W.2d at 538 (G.B. Anderson, J., concurring). Yet that justice joined in the court's opinion and wrote that "it is for the Legislature to address the complications and problems that will flow from the statutory language that the Legislature adopted." *See id.* at 539 (G.B. Anderson, J., concurring). Likewise, to the extent that any participant in the no-fault system would prefer a different outcome in this case, the most appropriate means of seeking change is to ask the legislature to amend the act.

12

American Family.  In light of that conclusion, we need not consider the parties' other arguments.

## D E C I S I O N

The district court erred by denying American Family's motion for summary judgment and granting SUMA's motion for summary judgment on SUMA's claim against American Family.  For the reasons stated above, American Family is entitled to summary judgment.

**Reversed.**

**HOOTEN**, Judge (concurring in part, dissenting in part)

I respectfully concur in part and dissent in part. I agree with the majority that the district court improperly granted summary judgment to SUMA, but unlike the majority, I would vacate the district court's judgment on jurisdictional grounds. Because the Minnesota No-Fault Act provides the exclusive remedy and procedure for the payment of medical expenses arising out of an automobile accident, and the no-fault act clearly provides that the medical expenses here were subject to mandatory arbitration, I would hold that the district court lacked subject matter jurisdiction and that the judgment in favor of SUMA should be vacated. Even if the issue of the validity of the assignments by the policyholders to SUMA of their claim to medical expenses were properly before us, I disagree with the majority's conclusion that those assignments are invalid. In accordance with well-established common law principles regarding the interpretation and validity of anti-assignment provisions in insurance contracts, I would conclude that the post-loss assignments by these policyholders to SUMA of their right to claim medical expenses under their insurance policies are valid and enforceable.

## I.

Regardless of whether the assignments are valid, the initial inquiry in this case is whether the district court had subject matter jurisdiction to resolve the merits of SUMA's claims arising from the assignments. The majority unnecessarily analyzes what would typically be a coverage issue regarding the validity of the assignments when this matter, involving SUMA's claim for medical expenses, could be resolved on jurisdictional

CD-1

grounds. *See Lipka v. Minn. Sch. Emps. Ass'n, Local 1980*, 550 N.W.2d 618, 622 (Minn. 1996) ("[J]udicial restraint bids us to refrain from deciding any issue not essential to the disposition of the particular controversy before us.").

The no-fault act provides for mandatory arbitration "of all cases at issue where the claim at the commencement of arbitration is in an amount of $10,000 or less against any insured's reparation obligor for no-fault benefits or comprehensive or collision damage coverage." Minn. Stat. § 65B.525 subd. 1 (2014). "The statute thereby deprives district courts of subject matter jurisdiction over a certain type of dispute—claims for . . . benefits of $10,000 or less." *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 800 (Minn. 2004); *see also In re the Claims for No-Fault Benefits Against Progressive Ins. Co.*, 720 N.W.2d 865, 871 (Minn. App. 2006) ("[S]ubject-matter jurisdiction arises from the monetary amount of the claim . . . ."), *review denied* (Minn. Nov. 22, 2006). SUMA sought to recover no-fault benefits from American Family in district court, not in mandatory arbitration.

Here, each of the pertinent policyholders' claims for medical expenses was for $10,000 or less, and once American Family denied their claims, the policyholders' sole right under the no-fault act was to pursue no-fault proceeds in mandatory arbitration. Minn. Stat. § 65B.525 subd. 1. Each insured did so, received an arbitration award, and received payment from American Family. SUMA did not move to vacate or modify any of the awards. As assignee, SUMA stood in the shoes of the policyholders and had only the procedural rights that they had, namely, to submit their claims to mandatory arbitration, which rights accrued when the medical expenses were billed. *See Ill. Farmers*, 683 N.W.2d

CD-2

at 803 ("An assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before assignment."). Under the plain language of the no-fault act, SUMA did not have the right to recover no-fault proceeds in district court.

In an attempt to avoid this jurisdictional limitation, SUMA required the policyholders to grant, along with the assignment, a contractual lien to SUMA with respect to their charges. But, the *exclusive* remedy for the payment of these disputed medical expenses under the no-fault act is arbitration. Nothing in the no-fault act allows a medical vendor to attach a lien to a claim that has been assigned. To the extent that the Uniform Commercial Code is inconsistent with the no-fault act, *see* Minn. Stat. § 336.9-309(5) (2014), the no-fault act prevails because it provides the exclusive means for obtaining payment of medical expenses under the personal injury protection provisions of an automobile insurance policy. *See* Minn. Stat. § 65B.01, subd. 1 (2014) (explaining the purpose of the no-fault act). By requiring the policyholders to grant a lien, and by bringing this action in district court, SUMA thwarted several purposes of the no-fault act, namely: to assure "prompt payment" for medical treatment, "to speed the administration of justice, to ease the burden of litigation on the courts of this state, and to create a system of small claims arbitration to decrease the expense of and to simplify litigation." Minn. Stat. § 65B.42(1)–(4) (2014).

SUMA appears to argue that because medical providers have to pay the insured's attorney for the recovery of these expenses in arbitration, the no-fault act unfairly reduces the payment of their bills, and it is for this reason that it obtains a UCC lien so that it can

CD-3

be assured of full payment. But, the no-fault act clearly does not provide for SUMA's hybrid no-fault/UCC lien approach to the payment of medical bills and we, as an error-correcting court, are not authorized to rewrite the no-fault act to allow such an approach. *See Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn. App. 1987) ("[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court."), *review denied* (Minn. Dec. 18, 1987).

The district court lacked subject matter jurisdiction to hear any disputes regarding the payment of these medical expenses, and the district court's judgment in favor of SUMA should be vacated.

## II.

Even if the issue of the validity of the assignments needed to be decided, I disagree with the majority's conclusion that the assignments are invalid. The assignments here are not "pre-loss" assignments as that term is used in caselaw, and the timing of when "loss" occurred for other purposes under the no-fault act is irrelevant here.

Minnesota common law, consistent with the majority rule, distinguishes between the pre-loss assignment of an insurance policy from a policyholder to another individual, and the assignment to a third party of the right to claim post-loss proceeds of an insurance policy. *See Star Windshield Repair, Inc. v. W. Nat'l Ins. Co.*, 768 N.W.2d 346, 350 n.6 (Minn. 2009); *id.* at 351 & n.1 (G.B. Anderson, J., concurring). It is well settled that "[a]ssignment, after loss, of the proceeds of insurance does not constitute an assignment of the policy, but only of a claim or right of action on the policy." *Windey v. N. Star Farmers Mut. Ins. Co.*, 231 Minn. 279, 283, 43 N.W.2d 99, 102 (1950); *see Aetna Cas. & Sur. Co.*

CD-4

*v. Valley Nat'l Bank of Ariz.*, 485 P.2d 837, 839 (Ariz. Ct. App. 1971) (stating that an anti-assignment clause is invalid "when an assignment is made by an insured after the liability-causing event has occurred"); 6B John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 4269 (rev. ed. 1979) ("[A]fter a loss has occurred and the rights under the policy have accrued, an assignment may be made without the consent of the insurer, even though the policy prohibits assignments. Under such circumstances, the assignment of a right under the policy is not regarded as a transfer of the policy itself, but rather of a chose in action."). Accordingly, "[s]uch an assignment does not void the policy under a provision that if it is assigned without the insurer's consent it shall become void." *Windey*, 231 Minn. at 283, 43 N.W.2d at 102. The rationale for such distinction is that the assignment of post-loss proceeds claims to a third party "does not affect the bargain struck between the insurer and the insured." *Star Windshield*, 768 N.W.2d at 350 n.6 (majority).

However, if a policyholder assigns the policy itself to another individual, this may alter the insurer's risk, thereby potentially exposing the insurer to greater risk than what it bargained for under the policy with the original policyholder. Because of this unforeseen greater risk caused by the assignment of the policy itself, anti-assignment clauses are included in insurance policies in order to insulate the insurer from the unforeseen risks associated with a new policyholder. *See Star Windshield*, 768 N.W.2d at 351 (concurrence).

Under the common law, then, the key to analyzing the validity of an anti-assignment clause is determining whether "the insured-against loss has occurred." *See Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 171 (2d Cir. 2006). "[O]nce the insured

against loss has occurred, the policy-holder essentially is transferring a cause of action rather than a particular risk profile." *Star Windshield*, 768 N.W.2d at 351 (quotation omitted). After an insured-against loss has occurred under the policy, there is no additional risk to the insurer if the original policyholder then assigns its right to any claims or proceeds under the policy to another. *Globecon*, 424 F.3d at 171. The insured-against "loss" under the policy is "the occurrence of the condition triggering liability under the policy." *Conrad Bros. v. John Deere Ins. Co.*, 640 N.W.2d 231, 236–37 (Iowa 2001) (noting the "great weight of authority" supporting the majority rule).

Here, according to the personal injury protection provisions of the insurance policy issued by American Family, the event triggering coverage of an "eligible injured person" under the policy is bodily injury "caused by an accident due to the maintenance or use of a motor vehicle as a vehicle." Bodily injury is defined under the policy as "bodily injury to or sickness, disease or death of any person." Eligible injured person means "[t]he named insured or relative who sustains bodily injury while occupying, or while a pedestrian as the result of an accident involving any motor vehicle or motorcycle," as well as "[a]ny other person who sustains bodily injury while occupying, or while a pedestrian as a result of an accident involving the insured motor vehicle."

Contrary to the majority's holding, the no-fault act did not abrogate these common law principles regarding the interpretation and validity of anti-assignment clauses in insurance policies. There is a presumption that statutes are consistent with the common law. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 73 (Minn. 2012). Therefore, unless the legislature expressly declares or clearly indicates that a statute is meant to abrogate or

modify a common law rule, the statute is construed so "as to harmonize with the existing body of law." *Bloom v. Am. Express Co.*, 222 Minn. 249, 254, 23 N.W.2d 570, 574 (Minn. 1946) (quotation omitted).

In interpreting the no-fault act, we are required to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014).

> The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous. In determining whether a statute is ambiguous, we will construe the statute's words and phrases according to their plain and ordinary meaning. A statute is only ambiguous if its language is subject to more than one reasonable interpretation. . . . When we conclude that a statute is unambiguous, our role is to enforce the language of the statute and not explore the spirit or purpose of the law. Alternatively, if we conclude that the language in a statute is ambiguous, then we may consider the factors set forth by the [l]egislature for interpreting a statute.

*Christianson v. Henke*, 831 N.W.2d 532, 536–37 (Minn. 2013) (quotations and citations omitted).

The no-fault act is silent on the issue of assignments. Although the no-fault act refers to a medical expense "loss," Minn. Stat. § 65B.54, subd. 1 (2014), it is unclear from the language of the statute whether this statutory reference is relevant to our determination of whether the policyholders' assignment to SUMA of their right to claim proceeds of their insurance policy is valid under the insurance policy and the common law. Therefore, I conclude that the no-fault act's use of the term "loss" is ambiguous in this context. When dealing with ambiguity in a statute, we may ascertain legislative intent by considering, among other matters, the occasion and necessity for the law, the wrong the law seeks to remedy, the goal of the statute, and the consequences of a particular interpretation. Minn.

Stat. § 645.16 (2014). Moreover, in ascertaining legislative intent, we are to assume that the legislature did not intend a result that is "absurd, impossible of execution, or unreasonable." Minn. Stat. § 645.17(1) (2014).

The no-fault act is a remedial statute, which was enacted "to relieve the severe economic stress of uncompensated victims of automobile accidents" by providing "prompt payment of specified basic economic loss benefits to victims" and "to encourage appropriate medical and rehabilitation treatment of the automobile accident victim by assuring prompt payment for such treatment." Minn. Stat. § 65B.42(1), (3). "[R]emedial statutes must be liberally construed for the purpose of accomplishing their objects." *State v. Indus. Tool & Die Works, Inc.*, 220 Minn. 591, 604, 21 N.W.2d 31, 38 (1945). Therefore, we must liberally construe the act to the extent necessary to ensure that the severe economic distress of uncompensated accident victims is alleviated and that victims are able to obtain appropriate medical and rehabilitation treatment for their injuries.

By holding that the anti-assignment clause in American Family's policies rendered these assignments invalid, the majority violates the canon of construction that requires that the statute be construed so as to harmonize with the common law principles regarding the interpretation and application of anti-assignment clauses. There is nothing in the no-fault act that indicates that the legislature intended for the no-fault act to change the well-established common law regarding the validity of an assignment of a claim or right of action on the policy after the insured-against loss had occurred. These were not assignments or transfers of the policy from a policyholder to another individual, which would subject the insurer to the potentially increased risk of insuring a different

policyholder.  In each case that is before us, prior to the assignment of a right to a claim for medical expenses, the event that triggered coverage for personal injury protection, i.e., bodily injury resulting from an automobile accident, had already occurred.  When the policyholders assigned their right to a claim under the no-fault act to SUMA immediately prior to the provision of medical treatment, American Family incurred no greater risk or exposure than it would have had without the assignment.   The majority's holding would result in our "rewriting insurance policies" and ignoring our "long-standing approval of permitting assignment of choses in action." *Star Windshield*, 768 N.W.2d at 351.

Further, it is highly doubtful that the legislature, in enacting a system of "[c]laims [p]ractices" for the "[p]ayment of basic economic loss benefits," ever intended the result advocated by the majority.  Minn. Stat. § 65B.54, subd. 1.  The no-fault act provides that "[b]asic economic loss benefits are payable monthly as loss accrues" and that "[l]oss accrues not when injury occurs, but as . . . medical . . . expense is incurred." *Id.*  Benefits are due within 30 days after the insurer "receives reasonable proof of the fact and amount of loss realized" and may be paid by the insurer "directly to persons supplying products, services or accommodations to the claimant." *Id.*  As is evident from the language utilized by the statute, its purpose is simply to provide when a *right of claim* accrues for the purpose of ensuring prompt payment.   There is nothing in the statute that indicates that the legislature intended to change the underlying requirement of what triggers personal injury protection coverage under an automobile insurance policy, i.e., bodily injury as a result of an automobile accident.  Under the majority's interpretation, an assignment to a medical provider immediately before medical treatment or even before the medical expense is

reduced to a written bill would be rendered invalid, but an assignment immediately after delivery of the bill would be valid. Certainly, this absurdity was never intended or contemplated by the legislature in its enactment of the no-fault act.

Finally, the majority's interpretation actually undermines the goal and intent of the no-fault act. This interpretation of the no-fault act would ultimately result in the refusal of medical providers to treat victims of automobile accidents without prior payment. Understandably, under these circumstances, medical providers may be reluctant to underwrite or front medical treatment for injured victims when there is no assurance that the insured will sign a post-billing assignment of his or her right to personal injury protection benefits under the policy. Such a result would undermine the express purpose of the no-fault act of assuring that automobile accident victims may obtain appropriate medical and rehabilitation treatment by assuring prompt payment for such treatment.

Based upon these well-established common law principles regarding the interpretation and validity of anti-assignment provisions, as well as the goals and purposes of the no-fault act, I would conclude that, once coverage was triggered under the policy because of bodily injury as the result of an automobile accident, the anti-assignment clause in American Family's policy did not affect the validity of the policyholders' assignments to SUMA of their right to payment of their medical expenses under the no-fault act.

Nevertheless, because the policyholders, and later SUMA, were entitled to seek relief solely by way of mandatory arbitration, the district court lacked subject matter jurisdiction to hear any disputes regarding the payment of these medical expenses. For this

reason, I would vacate the district court's judgment in favor of SUMA for lack of subject matter jurisdiction.